Cox *v.* STATE.

(Division A.   March 17, 1947.)

[29 So. (2d) 661.   No. 36370.]

**Fred B. Smith** and **Robert B. Smith III**, both of Ripley, for appellant.

**Greek L. Rice,** Attorney General, by **R. O. Arrington,** Assistant Attorney General, for appellee.

**Roberds, J.,** delivered the opinion of the court.

Cox was convicted of the unlawful possession of intoxicating liquor and appeals.

The only question raised on this appeal is the admissibility of evidence showing the liquor was found in the home of Cox. He claims that the search warrant did not authorize the search of his residence, because it did not describe the premises and did not name him as the person in possession of the liquor or of the premises. The warrant, following the averments of the affidavit, therefor, recites:

"Whereas, A. V. Robbins has this day made complaint on oath, before the undersigned officer, in and for said county, that he has reason to believe, and does believe, that intoxicating liquor is being (strike out any of the following not sworn to):

"(1) Stored, kept owned, controlled or possessed for purposes of sale in violation of law. (2) Sold or offered for sale in violation of law. (5) Attempted to be transported in violation of law, in the residence, outhouses, barns, stalls, smokehouses, crib, and in the field, yard, garden and woods near the residence of Mrs. Hersel Scott in the 5" district of said Benton County, Mississippi, and on Section 27, Township 5, Range 1 East, in said Benton County, Mississippi, and more particularly described as follows:

"14 acres more or less, near center East half of the Southeast Quarter, of Section 27, Township 5, Range 1 East and which is known to the public as 'Scott's Place' as well as 'Scotts Service Station' and which said land is located approximately one quarter ($\frac{1}{4}$) mile East of the Corporate Limits of the Town of Hickory Flat, Mississippi, and south of and adjacent to Highway No. 78, in violation of the laws of the State of Mississippi."

The affidavit contains this additional pertinent allegation: "And this belief is not feigned of malice against Mrs. Hersel Scott, who is believed to be guilty of said violations, but is founded on creditable information."

The State introduced as witnesses Mr. Robbins, the constable who made the search and arrested Cox; Mr. Rowland, the town marshal of Hickory Flat, who had been deputized by Robbins to aid in the search, and a Mr. Goode, a mechanic. These were all the witnesses who testified. Their evidence discloses that the officers went to a house occupied by Cox and his wife located apparently on the 14 acres of land mentioned in the affidavit and warrant. The building was 40 to 50 feet wide and 60 to 70 feet long. The front part was being used as a small store for the sale of merchandise, the rear being occupied by Cox and his wife as a residence. It may be inferred that Scott had formerly sold gasoline at this place, but apparently no gas was then being sold there by anyone.

The officers there found Mr. and Mrs. Hersel Scott, Cox and his wife, and one or two other persons. Mr. Robbins read the warrant to those present and delivered a copy of it to Mr. Scott. He did not give Cox a copy. The officers were informed that Cox and his wife resided there under a lease of the premises for one year previously executed by Mrs. Scott to Cox. The lease was shown to the officers. They proceeded to search the house, but found no liquor. However, they noticed therein a large iron safe and Robbins demanded that they open the safe.

Cox replied he did not know the combination. Robbins departed, leaving Rowland in charge. Shortly Robbins returned with Goode, who had an acetylene blow torch. With this torch Goode proceeded to "burn the lock out" on the safe, finally getting it open by this means, which required some two hours time. In this safe was found a considerable quantity of intoxicants. The officers took charge of that and arrested Cox.

It is further shown that Mr. and Mrs. Scott occupied as a home a building located 150 yards west of the residence of Cox and wife, there being a vacant lot between the two buildings. There were some outhouses connected with the Scott residence. No search was made of the Scott residence or the outhouses or grounds connected therewith.

It will be seen that the affidavit and warrant described the place where the liquor was allegedly stored or being offered for sale as "in the residence" of Mrs. Hersel Scott, and the outhouses and grounds "near the residence," located on the 14 acres of land particularly described, which land was known as "Scott's Place" or "Scott's Service Station." Therefore, the designated, described place to be searched was the residence of Mrs. Scott and the outhouses, grounds, etc., connected therewith, located somewhere on the 14-acre tract of land. No mention was made of Cox or of his residence. Did the warrant authorize the officers to search the residence of Cox under these circumstances?

It may be observed, first, that the residence of Cox was, of course, not an outhouse of the Scott residence within the meaning of the warrant.

Section 23 of the Constitution of Mississippi reads: "The people shall be secure in their persons, houses and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized."

Under this constitutional right the privacy of the home has been considered sacred in this State, not to be invaded except by clear authority. In Brewer v. State, 142 Miss. 100, 107 So. 376, the affidavit and warrant recited that intoxicating liquors were "being made, possessed, kept or sold on the premises of John Doe . . .," and that suspicion rested upon John Doe. The proof showed that Olivia Brewer and her husband Oliver Brewer lived in that residence as lessees. While the Court held the warrant void, it announced the rule that even though Nancy Tullos was renting from the Brewers a room in that house, as the State contended, this warrant gave no authority to the officers to search the Tullos room. In Strangi v. State, 134 Miss. 31, 98 So. 340, the warrant authorized the search of "a certain room in a building occupied by T. Strangi as store and residence . . . " The officers failed to find any liquor in the "room in the building occupied by T. Strangi as store and residence," whereupon they went to another and different building about 100 feet away, where they found the liquor involved in the case. The Court held that the officers had no authority to search the other building. In Taylor v. State, 134 Miss. 110, 98 So. 459, the affidavit and warrant described the premises as that occupied by the defendant as a residence. Nothing was said of the outhouse, grounds, etc., connected with the residence. The Court held the description not to include the grounds or the outhouses.

In the case at bar the warrant described the place as "in the residence" and the outhouses, grounds, etc., "near the residence" of Mrs. Scott. That did not authorize the search of the residence of Cox 150 yards away.

If it be contended the warrant described the entire 14 acre tract as a unit as a designated place to be searched, yet mentions the residence of Mrs. Scott, located thereon, it could hardly be maintained that every residence situated on that tract could be searched, regardless of the owner or occupant, where no other owner or oc-

cupant is mentioned. If that were true, then the described unit area might be enlarged to a section of land or a city block. It should be kept in mind in this case, too, that when the officer appeared he was informed, and shown the proof, of the fact that this was the residence of Cox and his wife and not that of Mrs. Scott.

Reversed and appellant discharged.