266 So.2d 567 (1972)
Ronald SCOTT
v.
STATE of Mississippi.
No. 46815.
Supreme Court of Mississippi.
July 3, 1972.
Rehearing Denied October 2, 1972.
Clinton E. Lockard, Karl Wiesenburg, Pascagoula, for appellant.
A.F. Summer, Atty. Gen. by Timmie Hancock, Sp. Asst. Atty. Gen., Jackson, for appellee.
*568 INZER, Justice:
Appellant Ronald Scott was convicted for the unlawful possession of marijuana in the Circuit Court of Jackson County and has appealed to this Court, contending among other grounds for reversal, that the search and seizure of the marijuana was illegal and the evidence obtained by the search was not admissible into evidence. We are of the opinion that this contention is well taken and that this case should be reversed and appellant discharged.
The record reflects that on September 8, 1970, a search warrant was issued authorizing the search of Apartment 6-C, Brentstone Apartments, in the City of Pascagoula. The affidavit for the search warrant alleged that the apartment was occupied and controlled by Joseph Acquisto. The statement of the underlying facts and circumstances tending to establish the grounds for the issuance of the search warrant was based upon information furnished by an informer, said to be a credible person, who claimed to have purchased marijuana from Acquisto at the apartment some six days prior to the date of the affidavit. Upon the information furnished, the magistrate found that probable cause existed to issue the search warrant. The officers proceeded to the apartment and entered with a key furnished by the landlord. They found Acquisto asleep in one of the bedrooms and gave him a copy of the search warrant. During the course of the search the officers found the door to one of the bedrooms locked. When the officers requested Acquisto to unlock the door, he informed them that the room was occupied by appellant, and he did not have the key to it. The officers obtained a screw driver and managed to unlock the door. They proceeded to search the room, and in a sea bag with appellant's name stenciled thereon, a plastic bag was found containing a substance which was later determined to be marijuana. About the time the search was completed, appellant came into the apartment and inquired of the officers as to what was going on and informed them that the room belonged to him. Thereupon the officers arrested appellant and charged him with possession of marijuana. Prior to trial appellant made a motion to suppress the evidence obtained as a result of the search of his possessions. The trial judge held that the search of appellant's room was valid and that the evidence was admissible. There is no question that insofar as Acquisto was concerned, the officers had a right to search the apartment and any evidence obtained as a result of the search would be admissible against him. The question here is whether the officers had a right to search the room admittedly occupied by appellant without a search warrant for that purpose and to use the evidence obtained thereby against the appellant.
The state does not contend that the officers had probable cause to search the room and the sea bag belonging to appellant, but contend that since the apartment was leased by Acquisto and the officers had a valid warrant to search the entire apartment, they had a right to search the entire apartment, including the possessions of the appellant, and that the evidence obtained as a result of the search was admissible against appellant.
On the other hand appellant contends that Article III, Section 23, Mississippi Constitution (1890), protects him against unreasonable searches and seizures and that the search of his possessions without probable cause and without a warrant violated his constitutionally protected rights.
There is no question from the record in this case that appellant was in possession of and exercised control over the room which he occupied in the apartment searched. The officers were forewarned that the room was occupied by appellant and knew appellant's name was stenciled on the sea bag that they searched. It is not contended that there was any probable cause to search the possessions of the appellant, but the officers relied entirely upon the search warrant issued to search the entire apartment.
*569 We are of the opinion that the question raised in this case was settled by this Court many years ago in the case of Brewer v. State, 142 Miss. 100, 107 So. 376 (1926), wherein Olivia Brewer and Nancy Tullos were convicted on a charge of having possession of a still. The search of the premises was made by virtue of a "John Doe" warrant which was held to be invalid. The evidence was conflicting as to whether Nancy Tullos was a guest in the house, or whether she rented and occupied a part of the house. This Court stated:
As to the other appellant, Nancy Tullos, the testimony offered by the state shows that she was occupying as a residence a part of the house, and that the search of her part of the house was made under the authority of the "John Doe" warrant. Nancy did not testify at all, but objected to the testimony obtained by the unlawful search.
The warrant was void, and the search of that part of the premises occupied and possessed by the appellant Nancy was unlawful, and the lower court should have sustained the objection to the testimony. Certainly the part of the house occupied by Nancy was her private possession, it was her home, and could not be searched without a lawful warrant for that purpose.

Nancy offered no testimony at the trial. Olivia said that Nancy was a mere visitor for the night, and knew nothing about the still. If this testimony was true, then Nancy should have been acquitted; but, if the testimony offered by the state was true  that is, that Nancy rented and occupied the part of the house in which they found her  then the testimony of the officers was incompetent as to Nancy, because it was secured without a search warrant to search her premises, and therefore, in either case, Nancy should have been discharged.
(Emphasis added.) (142 Miss. at 103-104, 107 So. at 376).
In Cox v. State, 201 Miss. 568, 29 So.2d 661 (1947), we said:
Section 23 of the Constitution of Mississippi reads: "The people shall be secure in their persons, houses and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized."
Under this constitutional right the privacy of the home has been considered sacred in this State, not to be invaded except by clear authority. In Brewer v. State, 142 Miss. 100, 107 So. 376, the affidavit and warrant recited that intoxicating liquors were "being made, possessed, kept or sold on the premises of John Doe * * *", and that suspicion rested upon John Doe. The proof showed that Olivia Brewer and her husband Oliver Brewer lived in that residence as lessees. While the Court held the warrant void, it announced the rule that even though Nancy Tullos was renting from the Brewers a room in that house, as the State contended, this warrant gave no authority to the officer to search the Tullos room.

(Emphasis added.) (201 Miss. at 571, 29 So.2d at 662).
These cases establish the rule in this state that where the proof shows that a person is renting a room or is in possession of a room in a house or an apartment under such circumstances as to make such person the owner thereof for the time being, such person is entitled to the protection afforded by Section 23 of the Constitution. Therefore, we hold that under the facts and circumstances of this case, the search of the room and possessions of appellant, without probable cause and without a warrant to search his property, was unlawful. We are aware that some courts of other jurisdictions have held to the contrary under similar circumstances, but this Court has heretofore followed the rule that the *570 protection afforded by Section 23 of our Constitution should be liberally construed in favor of our citizens and strictly construed against the state. We think this is the better rule, and we are content to continue to adhere to it.
For the reasons stated, this case must be reversed, and since the only evidence upon which appellant was convicted was obtained by an illegal search, appellant must be discharged.
Reversed and rendered.
RODGERS, P.J., and JONES, BRADY, PATTERSON and SMITH, JJ., concur.
GILLESPIE, C.J., and ROBERTSON and SUGG, JJ., dissent.
SUGG, Justice (dissenting):
I dissent from the majority opinion which holds that probable cause did not exist to search the room and sea bag of appellant. The officers were not aware of the fact that appellant occupied a part of the premises when the search warrant was secured, but obtained a warrant specifically describing the apartment to be searched. Before the search warrant was issued, the officers ascertained that Joseph Acquisto was the tenant who had leased the apartment in question from the owners. The appellant did not lease the apartment from the owners, but moved in shortly before the search. The first notice that the officers had that appellant was occupying a part of the apartment was at the time of the service of the search warrant.
As stated in the dissenting opinion in Copertino, infra, "Our approach to problems involving the detection and prosecution of crimes should be on the basis of common sense, not super technicality." We should never lose sight of the fact that all searches are not constitutionally prohibited, but only unreasonable searches. In my opinion the search was reasonable when measured by decisions of this Court and the Supreme Court of the United States.
Drugs were recovered not only in that part of the apartment occupied by Acquisto, who was named in the affidavit and search warrant, but also from the sea bag of appellant which was located in one of the bedrooms in the apartment properly described in the affidavit and search warrant.
The majority opinion will, for all practical purposes, make it possible for criminals to possess narcotics, drugs or other contraband with impunity by the simple expedient of leasing or owning a single-family dwelling unit, whether located in a multiple-dwelling unit or existing as a separate residence, locking all doors except the ones chosen by them, placing the names of another person on luggage or storage compartments in such locked rooms, storing contraband therein and claiming that the premises so locked and designated are occupied by some other party.
I do not agree with the majority that the fruits of the search should not have been admitted in evidence because the constitutional rights of the appellant were violated by the search. A different result was reached in Hanger v. United States, 398 F.2d 91 (8th Cir.1968), cert. denied, 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124, rehearing denied 395 U.S. 971, 89 S.Ct. 2106, 23 L.Ed.2d 761 (1969) where the claim made by this appellant as to the validity of the search was there decided adverse to one of the defendants.
Mrs. Loretta Myer, one of the defendants in Hanger, who was convicted of bank robbery and conspiracy, filed a motion to suppress evidence seized under a search warrant because she was not mentioned by name in the search warrant and a portion of the money was taken from her premises. In passing on this and other *571 contentions of the defendant, the Court stated:
Defendants argue that the places searched and the items seized were inadequately described in the application and search warrant and that the Court erred in not holding the warrant invalid and the items seized suppressed. Defendants first note that although the Government had available to it the serial numbers of the money it was searching for, the serial numbers were not set out in the warrant. Second, defendants urge that a portion of the money seized was taken from 1419a North Park Place, which is an entirely separate apartment from 1419 North Park Place which was described in the warrant. Further, defendant Meyer is not mentioned by name, and a portion of the money was taken from her premises at 1421 North Park Place.

The affidavit and search warrant, entitled "United States of America vs. Harold Hanger", read in pertinent part that there is reason to believe that:
"* * * on the premises known as and numbered 1419 and 1421 North Park, in the City of St. Louis, Missouri, being a two story building of brick and masonry construction, and consisting of two family dwelling units immediately adjacent to each other and connected with each other by an entryway, in the Eastern District of Missouri there is now being concealed certain property, namely monies taken in the robbery of the Chippewa Trust Company, a federally insured institution, such funds and monies consisting of United States currency and bills of various denominations from $1.00 to $100.00, and including twenty-five $20.00 bills from which the serial numbers had been previously recorded, * * *."
From the testimony adduced at the hearing held on the motions to suppress, it appears that both the 1419 and 1421 sides of the dwelling described are under one roof; that there is one outside entrance to each side, and above that entrance there appears the respective number of that side, 1419 and 1421. Apparently, 1419a and 1421a were only designated on the front side of the building and did not appear above the entrances to the respective sides of the dwelling. Apartment 1419 was unoccupied; Mr. and Mrs. Meyer occupied both 1421 and 1421a. A Federal Agent observed that on the second floor of the 1419 side there is a way to get through to the 1421 side, but he did not attempt to crawl through the entryway. (398 F.2d at 98.) (Emphasis added.)
......
Defendants' contention that the search was invalid because it was conducted in apartment 1419a, and not in 1419 as described in the warrant, and because it was directed at defendant Meyer, not named in the warrant, does not persuade us either. We start with the proposition that "It is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended." Steele v. United States No. 1, 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925). While defendants seek to bring themselves within the scope of those decisions that hold a warrant invalid which describes an entire building when cause is shown for searching only one apartment therein, we believe the warrant sufficiently sets forth the place to be searched. The entrance ways to the two sides of the multi-family dwelling were designated by number, "1419" and "1421". Considering the outside of the structure, the search warrant correctly described the dwelling as housing two separate apartments, both of which the search warrant was clearly designed to cover. In United States v. Santore, 290 F.2d 51, 66-67 (2 Cir.1960) cert. denied 365 U.S. 834, 81 S.Ct. 749, 5 L.Ed.2d 744, the Court sustained a warrant which directed *572 the search of a one-family house identified by street and number, even though officers upon presentation of the warrant learned that the defendant occupied the basement and second floor of the house while the first floor was rented to a family not involved in the alleged crime. In United States v. Jordan, 349 F.2d 107, 108-109 (6 Cir.1965), there was no indication that the house might have been divided into more than one living unit when it was searched, and it was held that the description and location of the premises were properly and adequately set out in the search warrant.
The warrant sufficiently described the premises to be searched with sufficient particularity to allow officers to conduct a reasonable search. The affiant had reasonable grounds to believe that defendants' dwelling was as characterized in the complaint and warrant and, under the circumstances of this case, the description "1419" would also cover "1419a."

With regard to Mrs. Meyer not being specified by name in the warrant, it is undisputed that she and her family occupied the entire 1421 side of the dwelling that was searched. Although desirable, a search warrant otherwise sufficient is not rendered invalid by the omission of the name of the owner or occupant of the premises to be searched. Dixon v. United States, 211 F.2d 547, 549 (5 Cir.1954); United States v. Bell, 17 F.R.D. 13, 14 (D.C. 1955). (398 F.2d at 99).
(Emphasis added).
The holding in Hanger, supra, has long been the law in this State, and we have held that if the premises to be searched are sufficiently described, the name of the owner or occupant of the building is not essential when probable cause for such search exists.
In Banks v. City of Jackson, 152 Miss. 844, 120 So. 209 (1929) this Court stated:
In the case at bar, the place to be searched is specifically described as being located at 123 West Griffith street, in the city of Jackson, in said county and state. This description of the place to be searched particularly pointed to a definitely ascertained place so as to exclude all others, and sufficiently described the premises to be searched. That a description of the place by street and number is sufficient was held in the case of Loeb v. State, 133 Miss. 883, 98 So. 449, in which the court said that: "In our State it does not require the technical description of a conveyance, but any description that will clearly give the officer information as to the location of the premises will be sufficient. In this case the number of the house and the street on which it is situated is an ample description." Since the premises to be searched were sufficiently described otherwise, the name of the owner or occupant of the building was not essential in aid of the description of the place to be searched.
It was held in the case of Comby v. State, 141 Miss. 561, 106 So. 827, that a warrant to search a person is void; and the warrant in question in this case does not involve an attempt to search any person. The legality of the arrest of the appellant is not here involved. The place to be searched was sufficiently described in the affidavit and warrant; and, while it is proper to name the owner or occupant of the premises to be searched if the owner or occupant thereof is known, still, if such owner or occupant is unknown, this will not prevent a search of the premises when probable cause for such search exists. The issuance of the search warrant was an adjudication of the fact that the name of the occupant of the described building was unknown to the affiant, and the undisputed testimony in this record is to the same effect. Hendricks v. State, 144 Miss. 87, 109 So. 263; Loeb v. State, 133 Miss. 883, 98 So. 449. One *573 who has reason to believe, and does believe, that the law is being violated in a certain house, and does not know the name of the occupant thereof, is not required to wait until he can find out the name of such occupant before causing a warrant to issue for the search of the house or premises. (152 Miss. at 850, 120 So. at 211.) (Emphasis added.)
In Traxler v. State, 244 Miss. 403, 142 So.2d 14 (1962) a search warrant and affidavit particularly describing the location of a place to be searched and stating the name of the occupant as "John Doe" was held valid where the description enabled officers to locate property with reasonable certainty.
This Court stated:
Appellant relies on Brewer v. State, 142 Miss. 100, 107 So. 376 (1926), in which the search warrant was for the house of "John Doe", without any particular description of the premises. Banks v. City of Jackson, 152 Miss. 844, 120 So. 209 (1929), distinguished Brewer on this basis, pointing out that the search warrant in Brewer had no description of the place to be searched. In Banks the premises were described as being occupied by "unknown occupant", at a given street address in the City of Jackson. The search warrant was held valid. The place was specifically described and located, and it was said the name of the owner was "not essential in aid of the description of the place to be searched." It is proper to name the owner or occupant if known, but, if he is unknown, this fact will not prevent a search of premises when probable cause exists, and the property to be searched is described with sufficient clarity. Traxler v. State, 220 Miss. 354, 67 So.2d 292 (1953); Rodgers, Search and Seizure in Mississippi, 28 Miss.L.J. 20, 25-28 (1956). (244 Miss. at 406, 142 So.2d at 15.) (Emphasis added.)
In Traxler v. State, 220 Miss. 354, 67 So.2d 292 (1953) an affidavit and search warrant which authorized the search of the residence and out-houses of an unknown owner on a parcel of land particularly described was held to be good.
On the authority of the above cases, it was not necessary to name appellant as being an occupant of the premises, and if a contrary rule is to be adopted by this Court, the cases cited above should be overruled. Probable cause existed to search Acquisto's apartment and the right to search extended to the entire apartment and its contents, regardless of the owner or occupant.
Since we have held that it is not necessary to name the owner or occupant of the premises searched for a search to be valid, it naturally follows that when a dwelling unit is occupied by more than one person, it should not be necessary to name all occupants for a search to be valid.
People v. Gorg, 157 Cal. App.2d 515, 321 P.2d 143 (1958) is a case strikingly similar in facts to the case at bar. Appellant, Alan Kent Gorg and Norman Fontaine were jointly charged with the illegal possession of narcotics. They were tried separately and found guilty. Gorg appealed from his judgment of conviction and one of the errors assigned was that the search of his premises was based on a search warrant which was a "blanket" or "general" warrant and as such invalid.
The Court stated:
The facts as disclosed by the record are as follows: Gorg, Fontaine and one Hyde, for some months prior to June 1, 1956, when the arrest and search were made, lived in the lower flat of a two-story building located in Berkeley. The flat consisted of three bedrooms, a bathroom, a kitchen and a living room. The owner testified that each tenant paid his rent separately to her in differing amounts. Each tenant had his own bedroom, which was never locked, and the three occupants shared the utility expenses, and the other rooms of the apartment. Each of the three bedrooms opened into one of the areas occupied in *574 common by the three tenants. (157 Cal. App.2d at 517, 321 P.2d at 144.) (Emphasis added.)
......

On June 1, 1956, the police obtained a search warrant which named Fontaine and which authorized a search of the lower flat in question "including all rooms and buildings used in connection with the premises and adjoining same, and in any receptacle or safe therein." At about 9 p.m. a number of people were observed leaving the premises. Shortly thereafter appellant was observed backing his automobile out of the premises. Fontaine and another person were with him. Officer Reppas placed appellant under arrest. Appellant then reached in his shirt pocket for a cigarette that looked like and was wrapped in the same manner as a marijuana cigarette. A scuffle ensued, during which appellant swallowed the cigarette. The arresting officer, in the presence of appellant, told another officer that appellant had swallowed a marijuana cigarette, and appellant remained silent. A search of the automobile disclosed the remains of a marijuana cigarette on the floor. Then the police asked Fontaine to unlock the premises, which he did, and then the police served the search warrant on Fontaine. A search of the premises was quite rewarding. A cellophane bag of marijuana seeds and two marijuana cigarette butts were found in an ash tray in the living room. In Fontaine's bedroom two bottles of marijuana were found, as well as several marijuana cigarette butts. In appellant's bedroom, under a bookcase, a cardboard box containing marijuana was found. Fontaine testified that all of this marijuana belonged to him. A search of appellant's clothing disclosed traces of marijuana in the debris from the pockets. (157 Cal. App.2d at 518, 321 P.2d at 145.) (Emphasis added.)
......

The last point raised by appellant is that the search was illegal because based on a warrant for a search of the premises occupied by Fontaine, and a search was made of the bedroom occupied by Gorg. It is contended that a warrant issued in the name of one tenant of a house does not authorize the officers to search those parts of the premises not occupied by the person named in the warrant. Otherwise, so it is contended, the warrant would be a "blanket" search warrant and void. See Williams v. State, 95 Okl.Cr. 131, 240 P.2d 1132, 31 A.L.R.2d 851.
There are two answers to this contention. The first is that, independent of the warrant, the officers, for reasons already stated, had reasonable grounds upon which to make the arrest and search without a warrant. Therefore, even if the search warrant were void, which it was not, the arrest and search can be justified on these facts known to the officers. In the second place, the warrant was not void. It was issued for a search of the lower flat in question, and Fontaine was named as the one occupying the named premises. Actually three people lived in this flat, sharing the living room, kitchen, bath and halls. The three bedrooms opened on these rooms and were not locked. All of the rooms constituted one living unit.

While a search warrant for one building on a tract of land occupied by a named person will not justify a search of another separate building on the same tract of land occupied by another person (Combs v. State, 94 Okl.Cr. 206, 233 P.2d 314; Wallace v. State, 89 Okl.Cr. 365, 208 P.2d 190), and will not justify a search of a separate floor of the same building occupied by an unnamed tenant (Linthicum v. State, 66 Okl.Cr. 327, 92 P.2d 381; United States v. Innelli, D.C., 286 F. 731), such rule only applies where there are separate and distinct living quarters occupied by different persons. A rule of reason must be applied. Here the living unit was one distinct unit occupied by three persons. When the police, pursuant to *575 the warrant, searched the living room and found marijuana, and then searched Fontaine's bedroom and found marijuana, they acted as reasonable and prudent men in searching the other two bedrooms that were unlocked and an integral part of the same living quarters.

The appeals from the order denying the motion for a new trial and from the judgment of conviction are affirmed. (157 Cal. App.2d at 522, 321 P.2d at 147.) (Emphasis added.)
Apartment 6-C, Brentstone Apartments, described in the search warrant in this case consisted of two bedrooms, one and one-half baths, one kitchen and one living room. Without question, the living unit was one distinct unit occupied by two persons. The only difference in this case and Gorg, supra, are that three persons instead of two lived in the apartment of Gorg and the bedroom doors were not locked.
When the officers served the warrant on Joseph Acquisto, searched the premises occupied by him and found drugs, they acted as reasonable and prudent men in searching the bedroom occupied by appellant which was an integral part of the living quarters.
The second reason for this dissent is that Brewer v. State, 142 Miss. 100, 107 So. 376 (1926) is not authority for the position relied on by a majority of this Court.
Brewer, supra, correctly held that a "John Doe" warrant, which did not describe the premises to be searched, was invalid.
The opinion then contains the statement: "[B]ut, if the testimony offered by the State was true  that is, that Nancy rented and occupied the part of the house in which they found her  then the testimony of the officers was incompetent as to Nancy,... ." 142 Miss. at 104, 107 So. at 376.
A careful reading of the original record in Brewer, supra, reveals that Oliver Brewer and his wife Olivia Brewer resided in a two room house. The front room was used for sleeping and the back room was used for cooking and eating. Nancy Tullos had been in the house for approximately four weeks before the search was made and the State did not prove that she was renting a portion of the premises.
The only testimony about her right to be there was furnished by Olivia Brewer who said that Nancy was a mere visitor for the night and two defense witnesses who said that she had been there three to five weeks.
There were no separate quarters in the house occupied by Nancy Tullos and the facts do not support the authority for the statement in Cox v. State, 201 Miss. 568, 29 So.2d 661 (1947) that "Nancy Tullos was renting from the Brewers a room in that house ..."
This case was put in the proper perspective in Banks v. City of Jackson, supra, where the Court stated:
The principal contention of appellant seems to be that the affidavit is fatally defective for the reason that it does not affirmatively state any fact "specifically designating the place to be searched, and the person or thing to be seized"; or, in other words, that the affidavit fails to name the occupant of the premises to be searched, but only alleged that the premises therein described were used or occupied by "unknown occupant." In support of this contention, the appellant relies principally upon the case of Brewer v. State, 142 Miss. 100, 107 So. 376, in which it was held that a warrant authorizing the search of the "premises of one `John Doe'" was void, and the case of Parkinson v. State, 145 Miss. 237, 110 So. 513, in which an affidavit was held to be insufficient which described the place to be searched as "the premises of the W.M. Parkinson estate, about seven miles east of Cruger in said county and state." Neither of these cases is decisive of the question here presented. In the Brewer case, supra, the place to be searched was described in the affidavit *576 and search warrant merely as "the premises of John Doe." No other description of the place to be searched appeared in either the affidavit or search warrant. This was, in effect, a blanket warrant, which, if held to be valid, would have authorized the search of any place or premises in the district of the officer who issued the warrant; and that such a warrant is void for the reason that it violates the provision of section 23 of the Constitution of 1890, which prohibits the issuance of search warrants except on probable cause, supported by oath or affirmation, specifically designating the place to be searched, is manifest. So likewise in the Parkinson case, supra, the warrant was held to be void for the reason that the premises to be searched were not sufficiently described. (152 Miss. at 849, 120 So. at 210.) (Emphasis added.)
Cox v. State, supra, involved an affidavit and search warrant for the field, yard, garden and woods near the residence of Mrs. Herschel Scott and then described a 14 acre tract of land in Benton County, Mississippi.
The proof showed that the appellant Cox and his wife, occupied a building on the described tract and used the front part of the building as a small store for the sale of merchandise, the rear being occupied by Cox and his wife as a residence.
The building occupied by Cox and his wife was located 150 yards east of the Scott residence and the court in holding the search of the Cox building invalid stated:
In the case at bar the warrant described the place as "in the residence" and the outhouses, grounds, etc., "near the residence" of Mrs. Scott. That did not authorize the search of the residence of Cox 150 yards away.
If it be contended the warrant described the entire 14 acre tract as a unit as a designated place to be searched, yet mentions the residence of Mrs. Scott, located thereon, it could hardly be maintained that every residence situated on that tract could be searched, regardless of the owner or occupant, where no other owner or occupant is mentioned. If that were true, then the described unit area might be enlarged to a section of land or a city block. It should be kept in mind in this case, too, that when the officer appeared he was informed, and shown the proof, of the fact that this was the residence of Cox and his wife and not that of Mrs. Scott. (201 Miss. at 572, 29 So. at 662.)
There were at least two residences on the 14 acres described in the search warrant, and although a single building containing multiple-dwelling units was not involved, the holding in Cox is in line with the weight of modern authority that where a building contains multiple dwelling units a warrant for the entire building is not good, but the affidavit and search warrant must describe the particular dwelling unit within the building sought to be searched. This is a sound rule because in modern times multiple housing accommodations, such as apartments and hotels have been constructed where many families live. Normally, separate living units of a multiple tenant building must be treated as if they were separate dwelling houses, and probable cause must be shown to search each one. It is not unreasonable to require that an affidavit and search warrant particularly specify the dwelling unit within the multiple housing accommodation sought to be searched. State v. Costakos, 101 R.I. 692, 226 A.2d 695 (1967); Fance v. State, 207 So.2d 331 (Fla.App. 1968); Commonwealth v. Copertino, 209 Pa.Super. 63, 224 A.2d 228 (1966).
Where a multiple-family unit has the appearance of a single-family dwelling, a search of the multiple-family unit having such appearance is legal. In United States v. Jordan, 349 F.2d 107 (C.A.6 1965) the Court stated:
The appellant's contention that there was not probable cause for the warrant *577 and search to include the upstairs portion of the premises herein, as being a separate living unit over which appellant had no control, is without merit. Appellant was listed with his rental agent as the sole lessee of the entire building and paid the monthly charges. The utilities for the entire building were carried exclusively in his name. He acknowledged the premises to be his residence. There was no indication otherwise that the house might have been divided into more than one living unit on the occasion of its search. It appears the description and location of the premises here brought into question were properly and adequately described and set out in the search warrant. It is evident, in the circumstances of this case, the search of appellant's entire premises and seizures pursuant thereto were in all respects legal. United States v. Santore, 290 F.2d 51 (C.A.2, 1960) cert. den. 365 U.S. 834, 81 S.Ct. 749, 5 L.Ed.2d 744; Carney v. United States, 79 F.2d 821 (C.A.6, 1935); United States v. Poppitt, 227 F. Supp. 73, D.C.Del., 1964. (349 F.2d at 109.)
An even stronger case is United States v. Santore, 290 F.2d 51 (C.A.2 1960) cert. den. 365 U.S. 834, 81 S.Ct. 749, 5 L.Ed.2d 744, where the defendant Orlando complained of the illegality of the search of his attic apartment and basement. On a warrant that stated that the applicant for the warrant had reason to believe that illegal narcotics were to be found "on the premises known as 164 Hill Street, Elmont, Long Island, New York, being a one family house, in the Eastern District of New York." The Court stated:
The description in the warrant was in accordance with the outward appearance of the structure, cf. Carney v. United States, 6 Cir., 1935, 79 F.2d 821, and in view of the concealment by Orlando of the interior alteration made by him it would be absurd to say that the Government was on notice as to it. The agents were not warned of a possible dual occupancy of the house until after they had shown the copy of the warrant to Orlando and had entered inside. At that moment it was too late for them, consistent with the success of their mission, to have retreated and obtained a new warrant. (290 F.2d at 67.) (Emphasis added.)
In the instant case the officers were not warned of dual occupancy of the apartment until the search warrant was served on Acquisto.
As noted in the original opinion appellant appeared about the time the search of his room was completed. At that moment it was too late for the officers to retreat and obtain a new warrant for the search of appellant's bedroom.
For the foregoing reasons, I am of the opinion that the case should be affirmed.
GILLESPIE, C.J., and ROBERTSON, J., join in this dissent.