301 So.2d 565 (1974)
Wallace Daniel SIMMONS
v.
STATE of Mississippi.
No. 47554.
Supreme Court of Mississippi.
October 14, 1974.
Rehearing Denied November 4, 1974.
*566 Charles J. Weeks, Pascagoula, for appellant.
A.F. Summer, Atty. Gen., by Karen Gilfoy, Sp. Asst. Atty. Gen., Jackson, for appellee.
SUGG, Justice:
Defendant and Marsha Gail Wilson were indicted by a grand jury in Jackson County for possession of 1,000 amphetamine tablets with intent to sell. A severance was granted on motion of Marsha Gail Wilson, and defendant was tried separately, convicted and sentenced to serve a term of 5 years in the state penitentiary.
On appeal defendant contends that the amphetamines were obtained as a result of an illegal search and seizure and should have been excluded; that his motion for a directed verdict at the close of the State's case should have been sustained; that the evidence did not show possession with intent to sell, but at the most, only constructive possession; and, that the verdict of the jury was against the overwhelming weight of the evidence.
Defendant was arrested by Terry Bulloch, a member of the Pascagoula Police Department, after the officer stopped defendant for the purpose of checking to ascertain whether or not defendant's station wagon was a stolen vehicle. Bulloch stated that he observed defendant's station wagon traveling in a westerly direction with a California tag on it. He noticed that the tag appeared to be very bright or clean and that the vehicle was very dirty. On this basis, he determined that he would stop the vehicle and check to see if either the tag was stolen or the vehicle was stolen. He radioed for a check on stolen vehicles and since the vehicle was nearing the city limits he stopped it so that he could obtain the report before the vehicle left the city.
After stopping the vehicle, Bulloch asked the defendant for his driver's license, frisked the defendant and found a large pocket knife in defendant's right rear pocket. He checked defendant's driver's license, which was in order, checked the automobile registration and found that the automobile did not belong to defendant. He described the knife as a large, foldup pocket knife with a switch release which would lock it closed or lock it open. He further *567 stated that it was a standard pocket knife with rather large dimensions, and upon finding the knife, charged defendant with carrying a concealed weapon.
By this time Captain Howard, another officer of the Pascagoula Police Department, had arrived at the scene and approached the vehicle on the right hand side. Marsha Gail Wilson was seated on the right front seat. Captain Howard requested Marsha Gail Wilson to exit the vehicle, and when she did so, he observed the top of a plastic bag protruding above her cut off blue jeans. After several requests, Marsha Gail Wilson handed Captain Howard a plastic bag which contained 1,000 amphetamine pills which were packaged in smaller bags with 50 pills to each bag.
On the evening in question defendant and Marsha Gail Wilson met at the home of Chris, an acquaintance of both parties. When Marsha Gail went to the home of Chris, she did not know the defendant was there, but the purpose of her visit was to request Chris to carry her to her home. She had known the defendant for approximately one week and he offered to take her home. Both the defendant and Marsha Gail testified that they left Chris' home and went to the home of a man named Chopper and finding no one at home, drove to the beach and parked the vehicle. While parked on the beach two officers searched the car while the occupants were sitting on the hood of the car. They returned to Chopper's home, found him at home, left Chopper's home, and followed the vehicle operated by Chopper to the place where they were stopped by Bulloch. Marsha Gail and defendant agreed on the above facts, but their testimony varies significantly in other details.
Marsha Gail testified that when they went to Chopper's home the second time defendant went in for a couple of minutes, returned to the vehicle and stated that they were to follow Chopper to Gautier because defendant wanted to get rid of something. She further testified that when the blue lights on Bulloch's car were activated she turned around to look at the officer's car and defendant handed her two bags, one of which had some pills in it and told her to "stick them in your pants." She stated that she was scared and complied with the request of defendant.
Defendant testified that they went to Chopper's house the first time at the request of Marsha Gail and on the way to Chopper's house she told him that she was fooling around with drugs and was "holding drugs." He explained that the term meant that she had drugs in her possession. He denied that he went into Chopper's house on the second trip to the house but contended they followed Chopper at the request of Marsha Gail. He denied that he handed the bags to Marsha Gail, but stated that they were her property and that he had never had them in his possession.
Appellant's first contention is that the amphetamines were obtained as a result of an illegal search and seizure and therefore should not have been admitted as evidence.
This contention requires consideration of the standing of the defendant to object to the introduction of the evidence which was obtained as set forth above. In Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), the Court stated:
However, we have also held that rights assured by the Fourth Amendment are personal rights, and that they may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure. See, e.g., Jones v. United States, 362 U.S. 257, 260-261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697, 701, 702, 78 A.L.R.2d 233. At one time, a defendant who wished to assert a Fourth Amendment objection was required to show that he was the owner or possessor of the seized property or that he had a possessory interest in the searched premises. In part *568 to avoid having to resolve the issue presented by this case, we relaxed those standing requirements in two alternative ways in Jones v. United States, supra. First, we held that when, as in Jones, possession of the seized evidence is itself an essential element of the offense with which the defendant is charged, the Government is precluded from denying that the defendant has the requisite possessory interest to challege the admission of the evidence. Second, we held alternatively that the defendant need have no possessory interest in the searched premises in order to have standing; it is sufficient that he be legitimately on those premises when the search occurs... . (390 U.S. at 389, 390; 88 S.Ct. at 974; 19 L.Ed.2d at 1256, 1257).
Possession of the amphetamines which were seized was an essential element of the offense with which the defendant was charged. The right of defendant to challenge the admission of the evidence would be unquestioned under Simmons and Jones except for the fact that Marsha Gail Wilson voluntarily testified that the amphetamines had been given to her by the defendant, were in her possession at the time of the search and that she gave them to a policeman. If she had not testified voluntarily, the evidence would have been inadmissible on objection of the defendant.
While the Fourth Amendment to the Constitution of the United States and Section 23 of the Mississippi Constitution of 1890 provide safeguards to protect persons from unreasonable searches and seizures and from convictions based on evidence obtained as a result thereof, they do not contain promises to stultify justice by erecting barriers to the admissibility of relevant evidence voluntarily given. There was nothing to prevent Marsha Gail Wilson from testifying voluntarily about the amphetamines taken from her person. The defendant had no standing to object to the voluntary testimony of his co-indictee. Consequently, after her testimony that she surrendered the amphetamines to the police, the physical evidence was admissible.
Defendant next contends that the evidence only established that he had constructive possession of a Schedule III narcotic and the evidence would not support a conviction for possession with intent to sell. There were 1,000 amphetamines in the bag packaged in 20 smaller packages with 50 pills in each package. The large number of amphetamines involved, the manner of packaging together with the testimony of the defendant's co-indictee that he, the defendant, was going to dispose of them was sufficient to justify the inference by the jury that the possession was for the purpose of sale. See United States v. Ortiz, 445 F.2d 1100 (10th Cir.1971); United States v. Moore, 452 F.2d 569 (6th Cir.1971).
It is well established that all proof need not be direct, but the jury may draw any reasonable inference from all the evidence in the case. Campbell v. State, 278 So.2d 420 (Miss. 1973); McLelland v. State, 204 So.2d 158 (Miss. 1967).
In his last assignment of error, appellant contends that the verdict of the jury is against the overwhelming weight of the evidence. We have held many times that this Court cannot set aside a verdict of guilty unless it is clear that the verdict is the result of bias, passion or prejudice or is manifestly against the overwhelming weight of the credible evidence.
In Wilson v. State, 264 So.2d 828 (Miss. 1972), we stated:
It was the function of the jury to pass upon the credibility of the witnesses and to resolve the issues. Since there was ample evidence, which we believed by the jury, justified the verdict, the verdict will not be disturbed on appeal... .
(264 So.2d at 830).
See also Clanton v. State, 279 So.2d 599 (Miss. 1973); Cochran v. State, 278 So.2d *569 451 (Miss. 1973); Murphree v. State, 228 So.2d 599 (Miss. 1969); McLelland v. State, supra.
The verdict of the jury was not against the overwhelming weight of the evidence since there was ample evidence to support the verdict. We also hold that the court properly denied defendant's request for a directed verdict at the close of the State's case.
Affirmed.
All Justices concur except PATTERSON, J., who dissents.
PATTERSON, Justice (dissenting):
I dissent since it is my belief that the Fourth Amendment guaranty against unreasonable searches and seizures has an enduring protection for the individual that should not be eroded by the Court's approval of an unconstitutional act.
The testimony of Officer Bulloch was that he stopped the vehicle driven by the appellant because it was dirty but had a clean California license plate. In my opinion these factors were insufficient to constitute probable cause for "frisking" or arresting the appellant. The subsequent activities of the parties leading to the discovery of contraband on the person of Marsha Wilson were so closely related in time to the initial and wrongful detention that they were inextricable parts of the act. I also am of the opinion that the climate created by the unconstitutional detention of the defendant influenced the actions of the parties thereafter so that they were not voluntary.
We are confronted with the all-too-familiar necessity of reconciling a legitimate need of the state for law enforcement with the constitutionally-protected rights of an individual. There is no question with respect to the law enforcement problem of suppressing contraband as there is none concerning the importance of safeguarding citizens in a free society in the guaranty of the Constitution against unreasonable searches and seizures. It is unfortunate that these guaranties belonging to all of the people must be construed, as they most often are, from a fact situation related to the "dirty business" of illicit drugs.
The total of many, many court opinions is that the exclusion of the fruit of the unconstitutional search is the greatest deterrent to this infringement upon the individual's guaranty. This deterrent, often criticized, has doubtless permitted the guilty to go free on occasion. Its value in obliging the state to restrain itself against unconstitutional access is immeasurable, though I believe it to be great because it protects guaranties designed for the ages while a case is for the moment.
It is my opinion, therefore, that it is the duty of the Court to enforce the constitutional rights since approval of unconstitutional practices, if long adhered to, may result in a weakening of the protection accorded free citizens by the Fourth Amendment. This course may afford a shelter for criminals on occasion, "but the forefathers thought this was not too great a price to pay for that decent privacy of home, papers and effects which is indispensable to individual dignity and self respect. They may have overvalued privacy, but I am not disposed to set their command at naught." Hobson v. United States, 226 F.2d 890, 893 (8th Cir.1955).
The unchallenged minimum requirement for a reasonable search permitted by the Constitution  automobile or no automobile  is probable cause. Condrado Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973).
The majority opinion holds that ordinarily the appellant would have standing under Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), to object to the introduction of the contraband and the related testimony and thereby raise the issue of probable cause, but concludes *570 that the objection did not reach the testimony of Marsha Wilson nor the contraband taken from her because, it was thought, both were voluntarily given. This conclusion may be correct, but I have doubts concerning it since no authorities are cited in support of the legal premise and, moreover, I do not agree that the facts fairly import voluntariness to the acts or testimony of Marsha Wilson.
The record indicates that she was seventeen years old at the time of the arrest which was made at approximately ten o'clock on the evening of August 6, 1972. As Officer Bulloch was frisking the appellant, Officers Howard and Willis arrived on the scene and directed that she get out of the automobile. As she did so, Howard observed the top of a cellophane bag protruding above the top of the bluejeans worn by Marsha. He thereupon requested that she remove the bag for his observation. She was reluctant to do so, but when the request was repeated several times (three or more), she removed the plastic bag. The amphetamines were then discovered and she was arrested.
The delivery of the bag and the testimony that it belonged to the appellant may be deemed voluntary. However, I think it more logical to conclude that it was directly motivated by the act of the officers in stopping the automobile without probable cause. If this assumption is correct, and the facts of the record point to no other conclusion, the contraband and the testimony were the products of the illegal arrest and were therefore involuntarily obtained. Kaplan v. Superior Court of Orange County, 6 Cal.3d 150, 98 Cal. Rptr. 649, 491 P.2d 1 (1971), and the authorities therein cited; and compare Commonwealth of Pennsylvania v. Pollard, 450 Pa. 138, 299 A.2d 233 (1973).
Pollard, supra, presented an issue arising from an arrest without probable cause wherein a passenger, when ordered from the vehicle by an officer, dropped a package of contraband and was arrested for possession of illicit drugs. The Court in its opinion approved that which was stated in Fletcher v. Wainwright, 399 F.2d 62 (5th Cir.1968), as follows:
... It presents no relevant considerations that aid in solving a situation where after an unconstitutional invasion of a protected area an item of evidence is hurled out of the window as a direct reaction to the illegal conduct. Several courts have considered this situation and have uniformly held that the initial illegality tainted the seizure of the evidence since the throwing was the direct consequence of the illegal entry. See Commonwealth of Massachusetts v. Painten, 1st Cir.1966, 368 F.2d 142; United States v. Merritt, 3d Cir.1961, 293 F.2d 742; Hobson v. United States, 8th Cir.1955, 226 F.2d 890; United States v. Blank, N.D. Ohio 1966, 251 F. Supp. 166. In such a situation it cannot be said that there was a "voluntary abandonment" of the evidence. See Commonwealth of Massachusetts v. Painten, supra at 144. The only courts that have allowed the seizure of evidence that was thrown out the window have emphasized that "no improper or unlawful act was committed by any of the officers" prior to the evidence being tossed out the window. See Cutchlow v. United States, 9th Cir.1962, 301 F.2d 295, 297.
399 F.2d at 64.
The Pennsylvania Court then concluded with its statements and citations:
Here the record establishes that the police officer's unlawful and coercive action was the causative factor which motivated appellant's abandonment. Accordingly, it must be concluded that the trial court erred by refusing to suppress the illegally obtained and tainted evidence. See, e.g., Williams v. United States, 99 U.S.App.D.C. 161, 237 F.2d 789 (1956); Moss v. Cox, 311 F. Supp. 1245 (E.D.Va. 1970).
299 A.2d at 236.
*571 I am persuaded that our approval of an arrest without probable cause will encourage violations of the Constitution at the expense of lawful means of enforcing the law. The purpose of the detention in this case was nothing more, it appears to me, than a fishing expedition based upon suspicion. Its success is dependent upon this Court's approving the venture. I would not lend the aid of the Court by permitting its fruits into evidence.