373 So.2d 1004 (1979)
Jimmy R. MILLER
v.
STATE of Mississippi.
No. 51020.
Supreme Court of Mississippi.
March 14, 1979.
Rehearing Denied August 22, 1979.
Eaves & Eaves, G. Jyles Eaves, Henry L. Rodgers, Louisville, for appellant.
A.F. Summer, Atty. Gen., by Susan L. Runnels, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, P.J., and SUGG and COFER, JJ.
EN BANC.
AFFIRMED.
LEE, Justice, for the Court:

ON PETITION FOR REHEARING
The conviction of Jimmy Ronald Miller in the Circuit Court of Newton County for possession of over one (1) ounce of marijuana with intent to deliver same and sentence to five (5) years in the Mississippi State Penitentiary was affirmed per curiam by this Court on March 14, 1979. On petition for rehearing, as on the original hearing, the principal question is whether or not the officers had probable cause to search an automobile driven by appellant and also occupied by his wife and minor children, and whether or not the search of a purse or bag containing marijuana and held by appellant's wife was an illegal seizure due to lack of probable cause. We think that on the petition for rehearing, the Court should address itself to those questions.
On October 1, 1977, Horace Watts and Kenneth Ray Henley, officers of the Newton Police Department, were checking drivers' licenses on Highway 80 Bypass in the City of Newton. They had received information that employees of two nearby factories were driving without licenses, and they *1005 set up a roadblock for the purpose of stopping all individuals traveling the highway at that point and checking their drivers' licenses. When the automobile of appellant was stopped, Officer Watts smelled the odor of marijuana in the vehicle and summoned Captain Henley and Officer Parks. Captain Henley was head of the narcotics division in the City of Newton Police Department. When he went to the driver's side of the automobile, where appellant was seated, he also smelled the odor of marijuana and asked appellant to get out of the automobile. Captain Henley then sat down on the edge of the seat vacated by appellant and he observed a purse or bag in the lap of Mrs. Miller, appellant's wife, with the corner of a plastic bag protruding therefrom in which he saw a green leafy substance. He took the purse containing the plastic bag, and he inspected therein a quantity of greenish leafy material which he suspected to be marijuana. Thereupon, he arrested appellant and Mrs. Miller. At the time appellant got out of the vehicle, Officer Watts "patted him down" to determine whether or not he was armed.

I.
Did the officers violate appellant's Fourth and Fourteenth Amendment rights in stopping appellant's automobile and detaining the occupants?
The appellant contends that the action of the police officers in stopping his automobile and detaining him, his wife and children was in violation of his Fourth and Fourteenth Amendment rights. He cites and relies upon State of Delaware, Petitioner v. William J. Prouse, III, on Writ of Certiorari to the Supreme Court of Delaware, 1979, ___ U.S. ___, 99 S.Ct. 1391, 59 L.Ed.2d 660. In that case, on motion to suppress marijuana which was seized as a result of the detention, the patrolman involved testified that prior to stopping the vehicle he had not observed traffic or equipment violations or any suspicious activity, and that he made the stop only in order to check the driver's license and registration. The patrolman was not acting pursuant to any standards, guidelines or procedures pertaining to document spot checks promulgated by either his department or the state's attorney general. He said that he saw the car in the area and he was not answering any complaint, so he decided to pull them off. The Court said:
"Accordingly, we hold that except in those situations in which there is at least articulate and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. This holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. Questioning of all oncoming traffic at roadblock-type stops is one possible alternative. We hold only that persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers. The judgment below is affirmed." (Emphasis added) ___ U.S. at ___, 99 S.Ct. at 1401.
We distinguish the case at bar from Prouse in that the Newton officers were not making a random or spot check of drivers, but had set up a roadblock and were checking all drivers (it is assumed that shifts changed at about 1:00 a.m.) from the two factories in the vicinity, after having received complaints that employees at those facilities were not licensed to drive automobiles. As the Court stated in Prouse, supra, "Questioning of all oncoming traffic at roadblock-type stops is one possible alternative" (or that do not involve the unbridled exercise of discretion). We hold that the officers did not violate appellant's Fourth and Fourteenth Amendment rights in stopping his automobile and detaining the occupants of same.

*1006 II.
Did the police officers have probable cause to search appellant's vehicle?
Officer Watts testified that, after appellant's car stopped, he asked appellant for his drivers license. When appellant produced same, at that time, he smelled the odor of marijuana inside the car. His testimony was positive and unequivocal that he smelled the odor of (burning) marijuana emanating from the car, which was owned and driven by appellant. He testified:
"Q. When you say you could smell marijuana, do you mean you can smell where it has been smoked or whether you can smell in its naked form?
A. Where it has been smoked.
Q. You are not trying to tell this jury you can smell it just in the raw state, can you?
A. No, sir. Once you smoke it, it gives a very strong odor.
Q. So, what you are saying, that you had smelled some marijuana smoke, and not marijuana itself?
A. I smelled the odor of marijuana.
Q. But the odor from the burned marijuana, is what you are saying?
A. Yes, I smelled the odor of marijuana in the car."
When Captain Henley came to the car at the request of Officer Watts, he smelled burning marijuana and he smelled raw marijuana. At that juncture, he asked appellant to get out of the car, he sat down on the corner of the front seat and noticed that Mrs. Miller had a large brown purse in her lap with a plastic bag therein, the corner of which was sticking out, and he could see that there was a green leafy substance in it, which he believed to be marijuana. He took the purse and bag, he examined the contents of the bag and was satisfied it was marijuana. Henley was in charge of narcotics investigations, Newton Police Department, he had extensive experience in that field, and he could detect marijuana in the burned and raw states (unburned). He testified:
"Q. Well, a man in the police business, you have smelled it before, you say?
A. Yes, sir.
Q. Did you ever smell any marijuana that was not burning?
A. Yes, sir.
Q. And you can smell it?
A. Yes, sir.
Q. Can you smell this?
A. Yes, sir.
Q. You can take it out. It was in that bag when you were smelling it, wasn't it?
A. When I smelled the odor?
Q. Yes."
There is no testimony from appellant or any other person that there was not burning marijuana in appellant's automobile. Captain Henley testified that the large plastic bag taken from the purse of Mrs. Miller contained thirteen (13) smaller plastic bags of marijuana. The record does not indicate whether any of the bags were open or whether they had been opened prior to the search.
The sense of smell is no less important or reliable than the sense of sight. It is elementary that under the "plain view" doctrine, the eye can do no wrong, and if contraband or an illegal object is seen, then the same may authorize a search for, and seizure of, the contraband. An expert woodsman may be able to tell the difference in wood and trees by the odor of same; a pipe smoker may know the difference in various brands of tobacco by the smell of same; a bream fisherman may point out the location of a bream bed by the odor; smelling the air may unlock the secrets of the sea to the mariner; a farmer may know whether to expect rain or dry weather by sniffing the summer wind. Captain Henley had training and experience in illegal drugs, he was able to detect the presence of marijuana, either burning or in an unburned state, and he so testified. The evidence is uncontradicted that two (2) officers smelled marijuana in appellant's vehicle, Watts that he smelled burning marijuana and Captain Henley that he smelled marijuana (although not specific, the indication is that he smelled both burning and unburned).
*1007 In Joyce v. State, 327 So.2d 255 (Miss. 1976), which involved probable cause on a charge of possession of marijuana, Justice Rodgers said in a concurring opinion:
"Moreover, such facts may be communicated to an officer not only by a reliable source stating that the automobile contains contraband, but such probable cause may be determined by any of the officer's five senses, for example, the smell of marijuana, [Fernandez v. United States, 321 F.2d 283, 286 (C.A. 9th 1963)] or the smell of intoxicating liquor [Eady v. State, [153 Miss. 691, 121 So. 293] supra]." 327 So.2d at 262.
The Court said in Hall v. State, 288 So.2d 850 (Miss. 1974):
"An automobile may be searched, given the proper circumstances, without a warrant either as an incident to a valid arrest or because there is probable cause that the vehicle itself may be evidence of crime or contain something that offends against the law." 288 So.2d at 851.
Fifty years ago in Eady v. State, 153 Miss. 691, 121 So. 293 (1929), this Court held that the odor of intoxicating liquor coming from an automobile was sufficient to constitute probable cause and to justify searching vehicle, even though the liquor itself was not visible. In that case, Eady and another person were engaged in changing a tire on the public road when a deputy sheriff drove by, stopped and offered his assistance. The deputy sheriff got out of his car, and took a jack to Eady in order to help him lift the tire off the road. He detected the odor of alcohol and, discerning that it did not come from the two individuals, he went close to the backseat of the car where the odor was much stronger. He then searched the car and found four (4) ten-gallon kegs of intoxicating liquor in the back covered with quilts. One of the kegs was leaking through the cork so that the whiskey leaked out on the bottom of the car. The Court referred to a citation from United States v. Borkowski, (D.C.) 268 F. 408 (1920), wherein it was stated:
"`Where the officers were lawfully on certain premises, and while engaged there saw a light in the cellar of a house two or three doors away, and detected the odor of raisins cooking, the officers proceeded to the house and entering the cellar found a still in operation. The court, in passing on whether or not the odor of cooking raisins was sufficient to warrant an arrest without a warrant, and to seize the evidence, stated: "If an officer may arrest when he actually sees the commission of a misdemeanor or a felony, why may he not do the same if the sense of smell informs him that a crime is being committed? Sight is but one of the senses, and an officer may be so trained that the sense of smell is as unerring as the sense of sight. These officers have said that there is that in the odor of boiling raisins which through their experience told them that a crime in violation of revenue law was in progress. That they were so skilled that they could thus detect through the sense of smell is not controverted. I see no reason why the power to arrest may not exist, if the act of commission appeals to the sense of smell as well as to that of sight."'" 153 Miss. at 695, 121 So. at 294.
In holding that the deputy sheriff had probable cause to search the automobile when he smelled intoxicating liquor that he could not see, the Eady Court said:
"It appears from the evidence in this case that the officer was in the public highway when he detected the scent of whisky and was not a trespasser in any wise upon appellants, and that when he came in contact with the appellants he discovered that this scent did not emanate from their bodies, consequently he must locate it elsewhere, if he locates it at all. When he came in contact with the car, but before touching it, or opening the door, he found the scent to be much stronger, thus indicating clearly that the liquor odor was coming from the car. He testified that he was familiar with the scent of whisky, and, taking this in connection with the demeanor of one of the appellants when he mentioned the heaviness of the car, we think was sufficient to *1008 make a man reasonably believe that the appellants had whisky in the car.
The court below passed upon the sufficiency of the evidence to constitute probable cause, and we are unable to say that the court was not warranted in so finding." 153 Miss. at 696, 121 So. at 294.
We are of the opinion that, under the facts of this case, the officers had probable cause to search appellant's vehicle.

III.
Were the officers authorized to seize the marijuana in appellant's automobile?
The search of appellant's vehicle had begun when Captain Henley asked him to get out of his car. At that time, as stated above, the officers had probable cause to search appellant's vehicle. When Captain Henley sat down on the edge of the automobile seat, he saw the bag of marijuana sticking out of Mrs. Miller's purse, and he saw a green leafy substance, which he believed to be marijuana. He removed the plastic bag, examined same, and confirmed to his satisfaction that the contents were marijuana. In Issacks v. State, 350 So.2d 1340 (Miss. 1977), this Court said:
"Only under certain circumstances may officers seize contraband in `plain view' without a warrant. They are (1) incident to a valid arrest, (2) where officers have a valid search warrant to search a given area for specific objects and in the course of the search come across contraband, (3) incident to `hot pursuit' of a fleeing suspect, or (4) incident to a search of a stopped automobile on probable cause or because of the mobility of the vehicle." (Emphasis added).
The present case comes within the rule enunciated in Issacks, and we are of the opinion that the officers were authorized to seize the contraband marijuana.
The petition for rehearing is denied.
ROBERTSON, P.J., and SUGG, WALKER, BOWLING and COFER, JJ., concur.
SMITH, P.J., specially concurs.
BROOM, J., SMITH, P.J., and SUGG, J., specially concur.
PATTERSON, C.J., dissents.
BROOM, Justice, specially concurring:
Although I concur with the result reached by the majority, in my opinion different standards may apply in deciding whether a warrantless search of a car is reasonable as contrasted with a warrantless search of a dwelling.
As stated in Britton v. State, 336 So.2d 663 (Fla.App. 1976), the "plain smell" principle may apply to justify arresting people within a car when the same principle would not apply to a dwelling. In Berry v. State, 316 So.2d 72 (Fla.App. 1975), the "plain smell" principle was invoked to justify the warrantless arrest of the defendant and probable cause to search his car. There the defendant and three co-defendants were seated inside a car when the law officer approached on the driver's side to ask for the driver's identification. In approaching the car the officer smelled marijuana and according to the Florida court,
He, then, by the use of his sense of smell, had probable cause to arrest the Defendant, and probable cause to search the car. We hold that the use of the sense of smell by one knowledgeable as to the identity of an odor, is just as valid a basis for finding probable cause, as is the use of the other senses such as sight, feel, or taste.
The "plain smell" doctrine was applied on almost identical facts to the instant case in State v. Compton, 13 Wash. App. 863, 538 P.2d 861 (1975). There an approaching law officer detected a marijuana odor as the defendant was producing his driver's license. He was asked to step from the vehicle and put his hands on top of it. Then the officer "frisked" him for weapons using the patting-down procedure which resulted in the officer feeling a small round object in the right front pocket which he judged to be a film cannister. The officer grabbed the cannister and inside it was found a quantity of LSD. Further search of the car resulted in recovery of a plastic *1009 bag (much like the case at bar) containing a small amount of greenish-brown vegetable substance. Based upon such circumstances, the Washington court upheld the warrantless search and arrest. In upholding the warrantless search and arrest, the Washington court stated:
... as to whether the smell of marijuana alone is sufficient to constitute probable cause for a search, there is case authority from other states.
Cited as precedent are the following: In Re S.E.B., 514 S.W.2d 948 (Tex.Civ.App. 1974); People v. Wolf, 15 Ill. App.3d 374, 304 N.E.2d 512 (1973); People v. Laird, 11 Ill. App.3d 414, 296 N.E.2d 864 (1973); and People v. Erb, 128 Ill. App.2d 126, 261 N.E.2d 431 (1970). The Washington court pointed out the different factors involved in considering the reasonableness of the searching of a vehicle as contrasted with the searching of a home. In its opinion the court noted:
The difficulty lies in securing a search warrant for a stopped motor vehicle with the risk that if a search is delayed the evidence could be disposed of by the accused.
As stated in Britton v. State, supra, "a greater justification is required for a warrantless intrusion into the privacy of a home than for a similar intrusion into an automobile... ."
Another case recognizing that mobility of the thing searched is a significant factor in determining whether a warrantless search is constitutionally permissible is the case of United States v. Sigal, 500 F.2d 1118 (1974).
Britton v. State, supra, astutely recognized:
A warrantless incursion into a citizen's home is therefore subject to our most critical examination. Behind the door of his home a citizen has an expectation of privacy far surpassing his similar interest in his driveway, front porch or other parts of the curtilage. An automobile is not a home, but a man's house trailer is his castle.
The exigencies and totality of the circumstances confronting Officers Watts and Henley rendered the arrest and seizure complained of constitutionally permissible.
As I view it, Miller's conviction in the instant case is properly affirmed.
SMITH, P.J., and SUGG, J., concur in this opinion.
SMITH, Presiding Justice, specially concurring:
I base my concurrence in the result upon the reasons stated in the specially concurring opinion of Justice Broom.
It has been difficult for me to justify the "patting down" of the driver and the seizure of his wife's handbag out of her hands, upon the basis of no more than a mere "smell". These acts on the part of the officers, done before it had been determined that a crime actually had been committed and before an arrest had been made, closely approach, in my view, an illegal search of the person of the two individuals concerned.
PATTERSON, Chief Justice, dissenting:
I agree with the majority in its holding, citing State of Delaware, Petitioner v. William J. Prouse, III, ___ U.S. ___, ___, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), that the investigatory stop was proper.
I do not agree and therefore dissent, with deference, from the majority view that the search of Mrs. Miller's purse was proper. It was without warrant and, I think, without probable cause.
In brief, the facts are that Miller's automobile, occupied by appellant, his wife, their three children, and Randal York, was stopped by officers for a routine license inspection on October 1, 1977, at about 1:00 a.m. This check included stopping vehicles whose occupants were leaving their place of employment at the conclusion of the night shift. When Miller's automobile was stopped, the officer thought he smelled marijuana, called other officers over for a "sniffing" to verify his suspicion, and when they "honored the point" by assuring him they detected the odor of marijuana, Miller was directed to get out of his car. While he *1010 was being "patted down" by Officer Watts, Officer Henley seated himself in the driver's seat and, detecting "... a plastic bag, the corner of it sticking out of a purse," reached over, obtained Mrs. Miller's purse, and took the plastic bag out. It contained a green substance which he believed to be marijuana. Miller and the other occupants of the car were arrested and carried to jail, including the children. Later Miller confessed the marijuana belonged to him. He contends that he confessed because he heard his wife sobbing on a tape recording, but an officer denied that he played the tape for Miller's benefit, but did so in his interrogation of York, an occupant of Miller's car. In any event, the tapes have been destroyed.
I again express my belief that the Fourth Amendment guaranty and the guaranty of our constitution have an enduring protection for the individual that should not be eroded by this Court's approval of an unconstitutional act. Compare Simmons v. State, 301 So.2d 565 (Miss. 1974), where I stated in dissent, and which I believe has present application:
We are confronted with the all-too-familiar necessity of reconciling a legitimate need of the state of law enforcement with the constitutionally-protected rights of an individual. There is no question with respect to the law enforcement problem of suppressing contraband as there is none concerning the importance of safeguarding citizens in a free society in the guaranty of the Constitution against unreasonable searches and seizures. It is unfortunate that these guaranties belonging to all of the people must be construed, as they most often are, from a fact situation related to the "dirty business" of illicit drugs.
The total of many, many court opinions is that the exclusion of the fruit of the unconstitutional search is the greatest deterrent to this infringement upon the individual's guaranty. This deterrent, often criticized, has doubtless permitted the guilty to go free on occasion. Its value in obliging the state to restrain itself against unconstitutional access is immeasurable, though I believe it to be great because it protects guaranties designed for the ages while a case is for the moment.
It is my opinion, therefore, that it is the duty of the Court to enforce the constitutional rights since approval of unconstitutional practices, if long adhered to, may result in a weakening of the protection accorded free citizens by the Fourth Amendment. This course may afford a shelter for criminals on occasion, "but the forefathers thought this was not too great a price to pay for that decent privacy of home, papers and effects which is indispensable to individual dignity and self respect. They may have overvalued privacy, but I am not disposed to set their command at naught." Hobson v. United States, 226 F.2d 890, 893 (8th Cir.1955).
The unchallenged minimum requirement for a reasonable search permitted by the Constitution  automobile or no automobile  is probable cause. Condrado Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973). (301 So.2d at 569)
* * * * * *
I am persuaded that our approval of an arrest without probable cause will encourage violations of the Constitution at the expense of lawful means of enforcing the law. The purpose of the detention in this case was nothing more, it appears to me, than a fishing expedition based upon suspicion. Its success is dependent upon this Court's approving the venture. I would not lend the aid of the Court by permitting its fruits into evidence. (301 So.2d at 571)
In my opinion, the officers had no right to trespass into the appellant's automobile and search the purse of the owner's wife. It could be they had the ability to smell the marijuana, in small plastic bags, enclosed in a larger plastic bag, all enclosed within a leather purse, but I would not extend the "plain view" doctrine by analogy to a "plain smell" doctrine, since the constitutional *1011 guaranties should not be eroded by an officer's ability to smell.