758 So.2d 1032 (2000)
Jimmie BOYD a/k/a Jimmy Jerome Boyd, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1998-KA-01964-COA.
Court of Appeals of Mississippi.
February 15, 2000.
*1033 David L. Walker, Southaven, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Attorney for Appellee.
BEFORE KING, P.J., DIAZ, AND IRVING, JJ.
DIAZ, J., for the Court:
¶ 1. The Yalobusha County Circuit Court convicted Jimmie Boyd, a/k/a Jimmy Jerome Boyd, of possession of cocaine with the intent to distribute. On appeal, Boyd alleges that the trial court erred in (1) denying his motion to suppress all evidence found during the search of his vehicle, as it was the product of an illegal stop, (2) denying a peremptory instruction and a circumstantial evidence instruction, and (3) denying his motion for a new trial or, alternatively, a judgment notwithstanding the verdict. Boyd's first assignment of error is well taken. Accordingly, we reverse and render.

FACTS
¶ 2. On September 10, 1997, while on patrol, Water Valley Police Officer Rick McCuan observed a vehicle being driven by Jimmie Boyd. Through his work as the court officer for the Water Valley municipal court system, Officer McCuan was aware that Boyd's driver's license had been suspended in 1989. Suspecting that Boyd was operating a vehicle with a suspended license, Officer McCuan flashed his blue lights and stopped Boyd.
¶ 3. While Officer McCuan advised dispatch of his location and the license plate number of Boyd's vehicle, Boyd exited his vehicle and approached McCuan who instructed Boyd to return to his vehicle. Officer McCuan then approached the vehicle and asked to see Boyd's driver's license, at which point, Boyd admitted that his license had indeed been suspended. Officer McCuan then arrested Boyd and placed him in the back of the patrol car.
¶ 4. When Officer McCuan first approached Boyd's vehicle, he smelled what he suspected to be marijuana. Officer McCuan also noticed that Boyd had four or five air fresheners hanging from his rearview mirror. Deciding that he had probable cause to suspect that the vehicle contained marijuana, Officer McCuan requested that the K-9 unit be called in to search the vehicle. The "drug-sniffing" dog searched Boyd's vehicle but failed to detect the presence of any illegal drugs. During the inventory search of the vehicle, Officer McCuan and another officer discovered a small white box stuffed in the back of the driver's seat. The box contained twenty-four rocks of cocaine, a razor blade, and a plastic bag containing more cocaine.
¶ 5. Boyd was charged with possession of a controlled substance with the intent to distribute. Following a trial held in the Yalobusha County Circuit Court, Boyd was convicted and sentenced as an habitual offender to a term of three years in the custody of the Mississippi Department of Corrections. Boyd was also ordered to pay a $3,000 fine.

*1034 DISCUSSION

WHETHER THE TRIAL COURT ERRED IN DENYING THE MOTION TO SUPPRESS
¶ 6. Boyd contends that he was denied rights and privileges guaranteed to him by the Fourth Amendment of the United States Constitution and by Section 23 of the Mississippi Constitution of 1890 because the police officer who stopped him lacked probable cause or even reasonable suspicion to do so. He claims because the stop was illegal, the subsequent search and seizure was invalid as well. Accordingly, Boyd argues that the trial court erred in denying his motion to suppress all evidence found inside his vehicle.
¶ 7. At the hearing on Boyd's motion to suppress, Officer McCuan testified that in addition to serving as a police officer, he also served as the court officer and warrant officer for the Water Valley municipal court system. He stated that it was in his capacity as court officer that he became aware that Boyd had been convicted of driving with a suspended license. Officer McCuan admitted that the only reason he stopped Boyd was to check his driver's license, and that Boyd was operating the vehicle in a reasonable manner, committing no traffic violations. The circuit judge denied Boyd's motion to suppress the evidence found in his vehicle, holding that "[t]he evidence before the Court is that the police officer had personal knowledge that some months prior to the present stop the Defendant did not have a driver's license and, therefore, the Defendant's Fourth Amendment rights were not violated because of the stop." We disagree.
¶ 8. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of this provision. Whren v. U.S., 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. Id.
¶ 9. The Supreme Court condemned so-called "spot checks" in Delaware v. Prouse, 440 U.S. 648, 663, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In that case, a police officer stopped an automobile and seized marijuana which was in plain view on the car floor. At the suppression hearing, the officer testified that prior to stopping the automobile, he had observed neither traffic or equipment violations nor any suspicious activity, and that he made the stop only in order to check the driver's license and the car's registration. Id. at 650-51, 99 S.Ct. 1391. The Court held that "except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment." Id. at 663, 99 S.Ct. 1391.
¶ 10. The Mississippi Supreme Court has not addressed whether a police officer's personal knowledge that an individual's license has been suspended is sufficient to constitute probable cause to stop the vehicle he is driving. The Mississippi Supreme Court has held that Prouse permits setting up a roadblock for the specific purpose of apprehending those suspected of driving without licenses. Miller v. State, 373 So.2d 1004, 1005 (Miss.1979). The police officers had received information that employees at two factories were driving without licenses. In response to that information, *1035 the policemen set up a roadblock, stopping all vehicles and checking the drivers' licenses. Id. at 1004. The court held that the stop did not violate the defendant's Fourth and Fourteenth Amendment rights, and distinguished the case from Prouse, explaining that "the Newton officers were not making a random or spot check of drivers, but had set up a roadblock and were checking all drivers... from the two factories in the vicinity, after having received complaints that employees at those facilities were not licensed to drive automobiles." Id. at 1005. See also, Drane v. State, 493 So.2d 294, 297 (Miss.1986) (holding roadblocks set up by wildlife conservation officers for the purpose of checking hunting licenses did not violate the Fourth Amendment).
¶ 11. One court has held that a police officer's personal knowledge that an individual's driver's license had been suspended approximately one or one and a half months before does not constitute "specific and articulable facts upon which to maintain a reasonable suspicion." State v. Tackett, 37 Ohio Misc.2d 9, 524 N.E.2d 536, 537 (1987). The sole basis for stopping the defendant was the officer's recollection that the defendant's license was under suspension one or one and a half months before. Id. The court held that
[i]t is well-settled that a court can not find probable cause to issue a search warrant on "stale" information. It would seem all the more persuasive that a court should not permit the deprivation of one's personal liberty upon the basis of information which is a month or more old. The court can certainly take notice of the fact that there are any number of ways that persons can and will regain driving privileges, after they have been suspended. In the absence of some other basis for probable cause, it is not asking too much, in view of modern radio and telecommunications, to require a police officer to obtain confirmation of the license status of an individual he recognizes ... prior to stopping that individual.
Id. (citations omitted).
¶ 12. The determinative factor in these cases is the relative "freshness" or "staleness" of the police officer's information. Other jurisdictions have upheld stops based upon personal knowledge of an officer; however, the knowledge must be recently acquired. State v. Leyva, 599 So.2d 691, 693 (Fla.Dist.Ct.App.1992) (holding officer's knowledge that driver's license had been suspended four to five weeks ago provided him with a reasonable suspicion upon which to make a valid legal stop); State v. Duesterhoeft, 311 N.W.2d 866, 867-68 (Minn.1981) (policeman had learned one month earlier that defendant's license was suspended); State v. Yeargan, 958 S.W.2d 626, 633 (Tenn.1997) (stop supported by reasonable suspicion where same officer had arrested the defendant six months earlier for driving under the influence and had been present in court when the defendant's license was revoked for one year); State v. Harris, 236 Ga.App. 525, 513 S.E.2d 1, 3 (1999) (arresting officer informed by other officers in his department that the defendant's driver's license had been suspended "in the last few weeks"); State v. Brown, 733 So.2d 1282, 1283 (La.Ct.App.1999) (officer had learned the day before that defendant's license had been suspended).
¶ 13. In the present case, it is unclear from the record exactly how "fresh" Officer McCuan's information was. At the hearing on the motion to suppress, he simply testified that he knew Boyd's driver's license had been suspended. He did not say when he acquired this information. The assistant district attorney stated that "Officer McCuan also testified that less than nine months prior to this stop, the Defendant, Mr. Boyd, was given a citation for driving with a suspended license." This testimony does not appear in the record. The assistant district attorney further argued "according to the court records of the municipal court clerk, with *1036 which Officer McCuan was familiar, his license was not eligible to beand we can bring him back in here and have him testify to thisbut it was not subject to being reinstated until, I believe, at least the year 1999." The State failed to recall Officer McCuan and have him testify accordingly. A copy of Boyd's driving history which appears in the record arguably reveals that Boyd's license could not be reinstated until 1999; however, there is no proof that Officer McCuan was aware of that information. In fact, Officer McCuan testified that for Boyd to obtain a valid driver's license, he only had to send in a reinstatement fee. He failed to mention that Boyd would not be able to have his license reinstated until 1999. If he had, the State's argument that probable cause existed to stop Boyd would be much stronger. See State v. Yeargan, 958 S.W.2d 626, 633 (Tenn.1997).
¶ 14. All we have before us is Officer McCuan's testimony that he knew Boyd's license had been suspended in 1989, eight years before the traffic stop. This does not satisfy Prouse's requirement that an "articulable and reasonable suspicion" exist that an individual is unlicensed before he may be stopped. Consequently, the traffic stop of Boyd was illegal, as was the subsequent search and seizure.
¶ 15. Because we reverse and render due to the illegal stop, we need not address Boyd's remaining assignments of error.
¶ 16. THE JUDGMENT OF THE YALOBUSHA COUNTY CIRCUIT COURT IS REVERSED AND RENDERED AND SENTENCE IS VACATED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO YALOBUSHA COUNTY.
McMILLIN, C.J., KING, P.J., IRVING, AND MOORE, JJ., CONCUR. SOUTHWICK, P.J., CONCURS IN RESULT ONLY. BRIDGES, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, PAYNE, AND THOMAS, JJ. PAYNE, J., CONCURS WITH SEPARATE WRITTEN OPINION.
BRIDGES, J., concurring:
¶ 17. While I concur that reversal of the trial court is the proper resolution, I must part company with the majority on the reasoning behind our mutual result. Specifically, I would argue that the majority is out of step with current authoritative case law when it disagreed with the trial court over its finding that "[t]he evidence before the Court is that the police officer had personal knowledge that some months prior to the present stop the Defendant did not have a driver's license and, therefore, the Defendant's Fourth Amendment rights were not violated because of the stop." The Mississippi Supreme Court defined "probable cause" as follows:
Probable cause is a practical, non-technical concept, based upon the conventional considerations of every day life on which reasonable and prudent men, not legal technicians, act. It arises when the facts and circumstances within an officer's knowledge, or of which he has reasonably trustworthy information, are sufficient to justify a man of average caution in the belief that a crime has been committed and that a particular individual committed it.
Strode v. State, 231 So.2d 779, 782 (Miss. 1970).
¶ 18. Meeting the constitutional requirements for an investigative stop and detention are much less rigorous than meeting the requirements for an arrest. Our supreme court has recognized that "given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest." Singletary v. State, 318 So.2d 873, 876 (Miss. 1975). An investigative stop may be made as long as an officer has "a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a felony...." McCray v. State, 486 *1037 So.2d 1247, 1249 (quoting United States v. Hensley, 469 U.S. 221, 229, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985)). If a felony is not involved, the officer may still conduct this type of stop if he has "some objective manifestation that the person stopped is, or is about to be engaged in criminal activity." McCray, 486 So.2d at 1249-50 (quoting United States v. Cortez, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).
¶ 19. As noted in a recent supreme court decision, the applicable test in this situation is one of reasonableness and neither our supreme court nor the United States Supreme Court has articulated a concrete rule to determine what circumstances justify an investigatory stop. Floyd v. City of Crystal Springs, 749 So.2d 110, 115 (Miss. 1999) (citing Green v. State, 348 So.2d 428, 429 (Miss.1977)). The question is approached on a case-by-case basis. Floyd, 749 So.2d at 115 (citing Green, 348 So.2d at 429). Most traffic violations, including driving with a suspended license, are misdemeanors. Anyone committing a misdemeanor is technically involved in a "criminal activity". Id. at 116. Further, the Court noted that reasonable cause for an investigatory stop may be based on an officer's personal observation or on an informant's tip if it bears indicia of reliability. Id. at 118 (citing Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972)).
¶ 20. The finding by the majority that the trial court was in error is correct. The prosecutor simply told the trial court what the officer would have said regarding his knowledge of Boyd's suspended driver's license instead of calling him to the stand and having the police officer testify directly. Although I have no doubt that as an officer of the court, the prosecutor truthfully reported what Officer McCuan would have said, he simply cannot testify for Officer McCuan. I believe that had Officer McCuan testified to that end, there would be no reversible error on this point. If Officer McCuan had personal knowledge that nine months prior to the instant occasion that Boyd was given a citation for driving with a suspended driver's license and he knew that it would be impossible with that time frame for Boyd to have the license reinstated, that would certainly be a enough to support a reasonable suspicion grounded in specific and articulable facts as discussed in McCray. The majority seems to disagree.
¶ 21. As the majority noted, relying on the knowledge that Boyd had a suspended driver's license in 1989 would be unacceptable. However, when a police officer testifies that he has personal knowledge that a person is driving with a suspended license either by familiarity with court records or issuance of a citation, I believe that probable cause can be firmly established under the guiding principles of Floyd and McCray. Of course, the information relied upon must be reasonably "fresh" as the majority notes, but that can vary from a few days to a few months depending upon the particular fact situation.
LEE, PAYNE AND THOMAS, JJ., JOIN THIS SEPARATE OPINION.
PAYNE, J., concurring:
¶ 22. I concur specially only to state that had Officer McCuan's memory of Boyd's suspended license been of more recent vintage, I would have followed the five cases cited in paragraph 12 as opposed to one 1987 Ohio County Court case as persuasive precedent.