556 So.2d 685 (1990)
James A. HAMILTON
v.
STATE of Mississippi.
No. 07-58788.
Supreme Court of Mississippi.
January 17, 1990.
Jim Waide, Tupelo, for appellant.
Mike C. Moore, Atty. Gen., John T. Kitchens, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, SULLIVAN and PITTMAN, JJ.
*686 ROY NOBLE LEE, Chief Justice, for the Court:
James A. Hamilton was indicted, tried and convicted in the Circuit Court of Oktibbeha County, Mississippi, for knowingly and intentionally possessing greater than one (1) kilogram of marijuana with the intent to distribute. The lower court sentenced him to twenty-five (25) years in the custody of the Mississippi Department of Corrections and fined him $10,000. Hamilton has appealed to this Court and assigns one (1) error in the trial below:
THE SEARCH VIOLATED HAMILTON'S RIGHTS UNDER THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS, SINCE THE WARRANT DID NOT AUTHORIZE THE SEARCH OF THE PARTICULAR PLACE WHICH WAS SEARCHED.

Facts
On September 2, 1986, David Gillespie, an investigator for the Clay County Sheriff's Department, received a tip from a confidential informant that there was a quantity of marijuana and cocaine at James Hamilton's residence in the Rock Hill Community of Oktibbeha County. The informant had also seen someone buy drugs at the residence within the past twenty-four hours. Gillespie and the informant rode by Hamilton's house so the informant could show Gillespie where it was located.
There were two residence size buildings on the plot of land where Hamilton lived. Nearest the road was a two-story building with green trim. In front of this building there was a maroon and green basketball court and a parking area. Across the front of the two-story building was a maroon walkway leading to stairs which go down the side of the building. Approximately 40 feet from the stairs and the nearest corner of the two-story building was a one-story building. This building also had green trim and had a maroon deck on the back.
Officer Gillespie went to Starkville to notify the Oktibbeha County law enforcement officers. Later that same day, "at dusk or later", Gillespie and Steve Westbrook, a deputy with the Oktibbeha County Sheriff's Department, drove by Hamilton's house to get the mileage and a description for a search warrant.
At the suppression hearing, Gillespie testified that he thought there was only one house on the plot of land. Westbrook testified that when viewed from the road "conceivably, a person could believe that there was one building there." Westbrook testified the warrant was for the residence of James Hamilton. When he "ran" the warrant, he knew there were two buildings but he did not know which building was Hamilton's residence.
When the two officers arrived back in Starkville, they went to Justice Court Judge Bernard Crump's house where Westbrook prepared a search warrant and a supporting affidavit which Gillespie signed. At this point, Gillespie's involvement ended when he was called back to West Point. Both the affidavit for the search warrant and the search warrant describe the place to be searched by stating:
From Hwy. 82 in Starkville proceed north on Montgomery Street past the city limits and continue north on Rock Hill Road. Proceed in this direction for 3.1 (approx.) miles. On the left is a two-story dwelling, white with maroon trim with a concrete basketball court in front. This dwelling is on the west side of Rock Hill Road. This is the dwelling to be searched.
The pre-printed language of the affidavit for the search warrant and the search warrant itself states in part:
5. The facts tending to establish the foregoing grounds for issuance of a Search Warrant are shown on a sheet headed "Underlying Facts and Circumstances" which is attached hereto made a part hereof and adopted herein by reference... .
The "Underlying Facts and Circumstances" sheet in its entirety states:
On Sept. 2, 1986, David Gillespie, a deputy with the Clay Co. Sheriff's Dept. was advised by a confidential and reliable informant whose information has led to arrests and convictions in the past that *687 cocaine is being kept and sold in the residence of James Hamilton on Rock Hill, Oktibbeha Co., MS. This informant also advised that he saw a quantity of marijuana at the residence also. This informant advised that the cocaine sale transpired within the last 24 hours.
On September 2, 1986 at approximately 10:30 p.m., Westbrook, Officer Ricky Peterson, and Oktibbeha County Sheriff Dolph Bryan arrived at Hamilton's property in the Sheriff's car. Other officers waited up the road. First, they went to the two-story building and knocked on the door, but got no response. They then walked down to the one-story building where Hamilton, apparently having seen them, met them at the door. Sheriff Bryan told Hamilton that he had a search warrant for his residence. After Westbrook gave Hamilton a copy, the officers secured the house and radioed the other officers to come on in. Hamilton testified that he told the officers that the warrant was for the two-story building, but Sheriff Bryan told him it was good for whatever the Sheriff said. Officer Westbrook and Sheriff Bryan were asked specifically about this conversation and both denied that Hamilton made any comment or challenged the warrant in any way.
Jacqueline Evans, Hamilton's fiance, and Hamilton's three young children from a previous marriage were inside the house with Hamilton. They were all brought into the living room and they sat on the couch during the search. Officer Charlie McVey of the Bureau of Narcotics arrived with a dog which was trained to sniff out marijuana, cocaine and various other drugs. The search began in Hamilton's bedroom where the dog indicated that there were drugs in a square wooden box on the floor near the head of the bed. The officers opened the box and found about a quarter (1/4) pound of marijuana in a Zip-Lock bag. They found a loaded .38 Special pistol in a closet and a set of triple beam scales. No other drugs were found in the living area of the house.
McVey then took the dog around the edges of the house where McVey discovered what appeared to be a basement-like area under the house with a dirt floor. McVey removed a board that was lying against the opening and allowed the dog to search the basement area. The dog alerted on a suitcase. McVey squeezed through the opening and yelled to the other officers inside the house to come down. The Sheriff heard McVey and went down to where there was a door leading to the basement. The door was padlocked. The officers used a bolt-cutter to cut the lock then went down to where McVey was. The officers opened the suitcase and found eighteen (18) separate packages of marijuana wrapped heavily in plastic with a baby powder type substance on them to disguise the odor. The total weight of the marijuana was eighteen and one-half (18 1/2) pounds. The officers then searched the two-story building. Hamilton owned both buildings. The officers found a .38 revolver, a stacked barrel Derringer, and two automatic pistols in a brown Cadillac parked inside the garage. Nothing else was found in the two-story building.
Officer McVey then decided to further search under the one-story residence. During this search, he found two purple Crown Royal bags inside a cinder block in the corner of the room. The bags held 24 white envelopes, each containing $1,000 in $100.00 bills for a total of $24,000. The search of the property ended around 1:00 or 1:30 a.m., September 3.
Hamilton filed a motion to suppress on October 9, 1987. A hearing on this and other motions was held on October 22, 1987, in which Officers Gillespie, Westbrook and McVey testified, as well as John Montgomery, the district attorney, and Hamilton. The court reserved ruling on the motion to suppress until it received Hamilton's memorandum in support of the motion. In the memorandum, Hamilton argued that the warrant only specified the two-story building to be searched and a search of the one-story building pursuant to that warrant was illegal. On October 29, immediately prior to trial, the court overruled Hamilton's motion to suppress.

*688 Law

Appellant contends that the search of the one-story building when the affidavit and search warrant were for a two-story dwelling, white with maroon trim, violated his constitutional rights. He cites and relies upon Strangi v. State, 134 Miss. 31, 98 So. 340 (Miss. 1923). In Strangi, the police had a warrant authorizing a search for intoxicating liquor in a particular room of a building which the defendant used as a residence and store. The warrant did not refer to any other buildings and, after searching the described room and finding no contraband, the police searched a separate building one hundred feet away and seized liquor. The Court held that the search of the separate building one hundred feet away was unlawful and the evidence seized from that search was inadmissible. However, the Court did not indicate what kind or type of building it was, or what its use was, and, obviously, there was no connection between it and the room and building described in the search warrant. There were no facts stated which connected the two buildings.
In the case at bar, the language of the affidavit for search warrant and search warrant is of great importance. Attached to the affidavit and search warrant was a sheet setting out "underlying facts and circumstances." The affidavit and search warrant specifically provided that the underlying facts and circumstances sheet be made a part thereof and adopted into the affidavit and warrant by reference.
The underlying facts and circumstances sheet, signed by Deputy David Gillespie, specifically set out that a reliable informant advised him that cocaine was being kept and sold in the residence of James Hamilton on Rock Hill, Oktibbeha County, Mississippi; that the confidential informant advised that he saw a quantity of marijuana at the residence also; and that the cocaine sale transpired within the last twenty-four hours. In executing the warrant, the officers were directed to, and found, the residence of appellant in which was discovered the contraband, i.e., marijuana.
2 LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 4.5(a) p. 209 (2d ed. 1987) states:
In determining whether the description given the executing officer was sufficiently detailed, it is of course important initially to examine the description which appears in the warrant itself. However, if that description is inadequate, it is appropriate to look to the description appearing in the warrant application or affidavit if it is clear that the executing officers were in a position to be aided by these documents, as where they were attached to the warrant at the time of execution and incorporated therein by reference.
(emphasis original)
In United States v. Gahagan, 865 F.2d 1490, 1497 (6th Cir.1989), cert. denied, ___ U.S. ___, 109 S.Ct. 3242, 106 L.Ed.2d 590 (1989), the Sixth Circuit adopted the above principle and held that where a warrant fails to describe the area to be searched with sufficient particularity the insufficiency can be cured by an affidavit if it is attached to the warrant and is incorporated by reference. Other jurisdictions have accepted and adopted the principle of incorporation by reference in a warrant. See United States v. Johnson, 690 F.2d 60, 64 (3d Cir.1982), cert. denied, 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 450 (1983); United States v. Wuagneux, 683 F.2d 1343, 1350-51 (11th Cir.1982), cert denied, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); United States v. Brock, 667 F.2d 1311, 1323 (9th Cir.1982); Application of Lafayette Academy, Inc., 610 F.2d 1, 4 (1st Cir.1979); United States v. Johnson, 541 F.2d 1311, 1315 (8th Cir.1976); State v. Santiago, 8 Conn. App. 290, 513 A.2d 710, 717 (1986); Sadie v. State, 488 So.2d 1368, 1372-74 (Ala.App. 1986); State v. Majors, 430 So.2d 183, 188 (La. App. 1983), writ denied, 435 So.2d 438 (La); State v. Woratzeck, 130 Ariz. 499, 637 P.2d 301 (1981).
The officer making the affidavit for the search warrant had driven by the appellant's property in a rural area and thought there was only one building on the property, i.e., the two-story building. The property *689 declined away from the road and there appeared to be only the two-story building, which was forty feet from the appellant's residence. The appellant owned all the property, but resided in the one-story building, which was white with trim. When the officers arrived upon the property, they went to the two-story building and received no answer. Appellant came to the front door of the one-story building, his residence, and the officers went there and served him with the warrant. They began to search this building where the appellant and his three children lived and where his fiance was present. The contraband was found in that building. The two-story building was unoccupied.
The State and appellant both cite Maryland v. Garrison, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). There, the Baltimore police obtained a search warrant to search the person of McWebb and "the premises known as 2036 Park Avenue third floor apartment." The officers encountered McWebb in front of the building and used his key to gain admittance to the first floor hallway and the third floor. When they opened the door to the third floor they saw Garrison standing in the hallway and the doors to two apartments open. Only after the police entered Garrison's apartment and found heroin, cash and drug paraphernalia did they realize there were two apartments. The Court held that the constitutionality of the officers' conduct must be judged in light of the information available to them at the time they acted. Garrison, 107 S.Ct. at 1017. The validity of the warrant must be assessed on the basis of the information that the officers disclosed or had a duty to discover and to disclose to the issuing magistrate. The Court stated:
"Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct., 1302, 1311, 93 L.Ed. 1879 (1949)
Garrison, 107 S.Ct. 1018, footnote 11.
The Court held that the officers believed the third floor and McWebb's apartment were one and the same when they obtained the warrant. Since they did not find out that there were two apartments until after they had entered Garrison's living space, the search of Garrison's apartment pursuant to a search warrant for McWebb's was valid. Garrison, 107 S.Ct. at 1019.
In Pool v. State, 483 So.2d 331, 334 (Miss. 1986), the Court discussed, and cited cases involving, descriptions in search warrants:
Descriptions in search warrants need not be positively specific and definite, but are sufficient if the places and things to be searched are designated in such manner that the officer making the search may locate them with reasonable certainty.
Cole v. State, 237 So.2d 443 (Miss. 1970); See also Williams v. State, 198 Miss. 848, 23 So.2d 692 (1945); Holston v. State, 161 Miss. 654, 137 So. 501 (1931); Matthews v. State, 134 Miss. 807, 100 So. 18 (1924); Bradley v. State, 134 Miss. 20, 98 So. 458 (1923).
The description given on the warrant "is not required to be as technical as in a deed of conveyance ..." Holston, 161 Miss. at 659, 137 So. at 503. The purpose of the description given is:
[F]irst to inform the officer by the warrant where the premises are, or may be found, and second, to enable the owner to determine whether the officer has legal authority to make a search, so that resistance will not be made, or should not be made, to the search.

Id. See also Matthews, 134 Miss. at 814, 100 So. at 20.
Finally, where the officers not only could, but did, locate the property by means of the description given in the warrant, that factor is evidence that the legal description is sufficient. Cole, 237 So.2d at 445; Williams, 198 Miss. at 851-52, 23 So.2d at 693.
*690 The record is uncontradicted that the officers had probable cause to search the residence of appellant and they went to and upon the premises for the purpose of searching appellant's residence. The officers found him living in the one-story building with his family. At the suppression hearing, appellant testified that the building was his residence. We are of the opinion that the affidavit and search warrant, both of which incorporated by reference and made a part of the instruments the underlying facts and circumstances sheet, sufficiently directed the officers to appellant's premises where they found him in his residence, executed the warrant and discovered marijuana. Therefore, the lower court was not in error when it denied a motion to suppress the evidence found in the search, after a full and complete hearing.
The judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.