# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-KA-00591-SCT

*MICHAEL LYNN GRAVES*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/17/93 |
| TRIAL JUDGE: | HON. JOHN M. MONTGOMERY |
| COURT FROM WHICH APPEALED: | OKTIBBEHA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS L. KESLER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | FORREST ALLGOOD |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 12/18/97 |
| MOTION FOR REHEARING FILED: 1/20/1998 | |
| MANDATE ISSUED: | 5/27/98 |

**EN BANC.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. Michael Graves was convicted by the Circuit Court of Oktibbeha County, Mississippi, for possession of Lysergic Acid Diethylamide (LSD) with the intent to distribute. After trial by jury, Graves was found guilty as charged and was sentenced to ten years in the Department of Corrections and a $5,000.00 fine. His sentence was suspended dependent upon other conditions being met. Graves appealed his conviction to this Court and assigned as error his contention that the trial court committed reversible error by denying Graves' motion to suppress the controlled substances found in his bedroom closet.

## FACTS

¶2. In June, 1991, Agent Bobby Grimes and other narcotics officers were investigating drug activity in and about Oktibbeha County. The suspect of this investigation was Scott Malone. The officers made a controlled buy of LSD from Scott Malone on June 11, 1991, using a cooperating individual named Gary Owens. Within hours of making the controlled buy, the officers obtained a search

warrant for the mobile home occupied by Malone. The search warrant was not directed to the defendant herein, Michael Graves, as the officers did not know his name at this point in time, nor did they have probable cause to believe that any other person resided in the mobile home. Informant Owens gave no information concerning Graves, who shared the trailer with Malone. The search warrant was sworn to by agent Bobby Grimes and pertained to the trailer located on Lot 168, University Hills Trailer Park, and all vehicles parked at this location. Grimes stated that this trailer was occupied and controlled by Scott Malone and that the items searched for were to be LSD and U.S. currency.

¶3. After obtaining the search warrant, the following Mississippi Bureau of Narcotics (MBN) agents proceeded to the trailer: Bobby Grimes, Wesley Koehn, Wesley Coward and Charlie McVey. When they arrived at the trailer, agents Grimes, McVey, and Koehn went to the front door and knocked. Agent Coward secured the rear door of the trailer. McVey checked the front door and found it unlocked. The officers then entered the trailer with guns drawn, announcing that they were police officers with a search warrant.

¶4. Inside the trailer, the officers found Scott Malone, Rusty Yarborough and Michael Graves. A copy of the search warrant was given to Malone. Sergeant McVey advised all three of their *Miranda* rights. The agents subsequently learned that Yarborough did not live in the trailer, and allowed him to leave. Graves was forced to remain in the trailer.

¶5. Malone was then escorted to his bedroom and told of the drug purchases. He surrendered dosage units of LSD and "buy money" to the agents. McVey asked Malone if he had any more. Malone said, "That's all I've got." McVey then asked if his roommate had any, and Malone said, "He's supposed to have some."

¶6. The agents confronted Graves in the trailer "living room" with this information and told him, "You might as well surrender yours, we know you've got some." Graves denied having any at first, but was then told that Malone had informed the agents that he did. Graves stated, "I got it in the closet -- it's in my room in the closet." According to Grimes, "We told him to come on and show us where it's at. He got up, we walked with him into the bedroom, he pointed up to the shelf in the closet and said, 'It's up there in the envelope laying in the shelf.' And I reached up and got it and opened the envelope up and it had two hundred and one (201) dosage units in it."

¶7. According to Grimes, the trailer was shared by both Malone and Graves, with each having separate sleeping quarters. Graves testified that each co-tenant possessed his own separate bedroom. They shared the remainder of the trailer. Graves paid half of the rent and half of the utilities.

¶8. Prior to his trial, Graves moved to suppress the LSD found in his closet, arguing that he had exclusive occupancy of the bedroom in which the LSD was found when the officers from the MBN came to search the trailer which he occupied jointly with Malone. Consequently, he argued that the search of his bedroom was invalid.

¶9. The State pointed out, through the testimony of Officer Grimes, that when the search warrant was requested, there was no knowledge on the part of the State as to the identity of Graves. The State argued that Graves was merely discovered on the premises, and the officers learned that he apparently occupied a separate bedroom after they were on the premises executing a warrant to

search the trailer at 186 University Hills Trailer Camp occupied by Scott Malone. Furthermore, it was pointed out that both Graves and Malone were informed of their *Miranda* rights when the officers entered the premises with the search warrant.

¶10. At the suppression hearing, the State did not argue consent or waiver, but insisted that Graves' room was searched pursuant to a valid warrant. According to Officer Grimes, "[W]e did not ask him for his permission to search his room. We asked him for the additional dosage units of LSD. He produced those un (sic)-- dosage units to us which were concealed in his room."

¶11. The defense properly objected that the State's proof was inconsistent since the State was not arguing consent.

¶12. The trial court, after a hearing, overruled the suppression motion, thereby allowing the evidence to be introduced against Graves.

## LAW

### 1) Dual-Occupancy Requirements for Search Warrants

¶13. Graves argues on appeal that the evidence introduced against him was obtained by the State in violation of his rights under the United States Constitution and the Mississippi Constitution.

¶14. The Fourth Amendment to the U.S. Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

**U.S. Const. amend. IV.**

¶15. The Mississippi Constitution, guaranteeing her citizens similar rights, states:

> The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized.

Miss. Const. of 1890, art. 3, § 23 (1890).

¶16. The Warrant Clause of the Fourth Amendment:

> categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.' The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit.

*Maryland v. Garrison*, 480 U.S. 79, 84 (1987). In *Garrison*, the United States Supreme Court

upheld a warrant which provided for the search of the third floor of a building. Unknown to the police, the third floor separated into two distinct separately occupied apartments. The Court stated "an officer's reasonable failure to appreciate that a valid warrant describes too broadly the premises to be searched" does not invalidate the warrant or the search. *Garrison*, 480 U.S. at 88.

¶17. However, this Court has found that the Mississippi Constitution extends greater protections of an individual's reasonable expectation of privacy than those enounced under Federal law. As stated in *Scott v. State*, 266 So. 2d 567, 569-70 (Miss. 1972), "the protection afforded by Section 23 of our Constitution should be liberally construed in favor of our citizens and strictly construed against the state." This Court further stated:

> that where the proof shows that a person is renting a room or is in possession of a room in a house or an apartment under such circumstances as to make such person the owner thereof for the time being, such person is entitled to the protection afforded by Section 23 of the Constitution.

*Id.* at 569.

¶18. Section 23 of the Mississippi Constitution provides greater protections to our citizens than those found within the United States Constitution. Where the proof shows that a portion of a residence is in the sole, separate, and exclusive possession of an individual other than the one named by the search warrant, that individual has a reasonable expectation of privacy in his or her solely occupied portion.

¶19. It is clear that Graves possessed a reasonable expectation of privacy in his solely occupied portion of the house trailer. After learning of his separate occupancy of the bedroom prior to searching it, the officers must have either obtained a new warrant for his separate room or searched the room pursuant to a valid exception to Section 23's warrant requirement. As stated in *Moss v. State*, 411 So. 2d 90 (Miss. 1982);

> The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home -a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their . . . houses . . . shall not be violated.' That language unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'

*Moss*, 411 So. 2d at 93-94 (quoting *Silverman v. United States*, 365 US 505, 511).

¶20. Our notions of privacy reach back to the days of William Pitt, who speaking to Parliament, said:

> The poorest man may, in his cottage, bid defiance to all the force of the crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the King of England may not enter; all his force dares not cross the threshold of the ruined tenement.

N. Larson, *The History and Development of the Fourth Amendment to the United States Constitution* 49-50 (1937).

¶21. The mere fact that Graves' home was a bedroom, under his sole occupation and control, in a trailer shared with a roommate, does not lessen Graves' constitutional right to be secure in his home.

## 2) Valid Exceptions to the Warrant Requirement

¶22. The United States Supreme Court has recognized that "the rule against warrantless searches is subject to a few 'specifically established and well-delineated exceptions.'" *Smith v. State*, 419 So. 2d 563, 569 (Miss. 1982)(quoting *Katz v. United States*, 389 U.S. 347, 357(1967)). This court has set forth numerous exceptions to the requirement of obtaining a valid search warrant. These exceptions include search incident to arrest,[1] search of a vehicle,[2] plain view,[3] stop and frisk,[4] hot pursuit and emergency search,[5] administrative search,[6] and others. Chief is the exception allowing for consent to a search.

¶23. Mississippi has long recognized that a defendant can waive his or her rights under the warrant requirement by consenting to a search. *See Penick v. State*, 440 So. 2d 547, 549-50 (Miss. 1983). A voluntary consent to a search eliminates an officer's need to obtain a search warrant. *Davis v. United States*, 328 U.S. 582 (1946); *Jones v. Mississippi Dept. of Public Safety,* 607 So. 2d 23, 26 (Miss. 1991); *Waldrop v. State*, 544 So. 2d 834 (Miss. 1989); *Whittington v. State*, 523 So. 2d 966 (Miss. 1988); *Hudson v. State*, 475 So. 2d 156 (Miss. 1985).

¶24. In *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), the United States Supreme Court stated that "the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." *Jones*, 607 So. 2d at 27 (quoting *Schneckloth*, 412 U.S. at 226-228). The United States Supreme Court directed the courts to look to whether the circumstances were coercive, occurred while in the custody of law enforcement or occurred in the course of a station house investigation. The court must also look to the individual's maturity, impressionability, experience, and education. Further, the court should consider whether the person was excited, under the influence of drugs or alcohol, or mentally incompetent. If the consent occurred while the defendant was being generally cooperative, the consent is more likely to be voluntary; however, if the defendant agreed and then changed his mind, the consent should be suspect. *Jones*, 607 So. 2d at 27 (quoting *Schneckloth*, 412 U.S. at 226-228).

¶25. Mississippi, in a sharp departure from the limits imposed by the United States Supreme Court, has stated that *knowledgeable waiver* is necessary before consenting to a search. *Penick*, 440 So. 2d at 551. This holding is in contrast to the United States Supreme Court's standard as set forth in *Schneckloth*, which holds that "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Schneckloth*, 412 U.S. at 248-49.

¶26. In *Penick v. State*, this Court held that the Mississippi Constitution required that prior to giving consent and waiving one's rights, "it must clearly appear that she voluntarily permitted, or expressly invited and agreed to the search, being *cognizant of her rights in the premises* when the officer proposed to her, by asking her permission, to make the search without a warrant." *Penick*, 440 So. 2d at 549 (quoting *Smith v. State*, 98 So. 344, 345 (1923)).

¶27. The *Penick* knowledgeable waiver test was limited by this Court in ***Jones v. Mississippi Dept. of Public Safety***, 607 So. 2d 23 (Miss. 1991), where the defendant did not claim that "his consent was not knowledgeable." ***Jones***, 607 So. 2d at 28. ***Jones*** states that *"[t]he State is not required to demonstrate knowledge"* but rather the "*burden is on the defendant to show impaired consent or some diminished capacity." **Jones***, 607 So. 2d at 28 (emphasis added). ***Jones*** limits ***Penick's*** knowledgeable waiver requirement to only those cases where the defendant specifically claims that his or her consent was not knowledgeable.

¶28. ***Jones*** holds that the State has no initial burden to demonstrate knowledgeable waiver. If the defendant claims that his waiver was not knowledgeable, the burden is on him to raise the issue of lack of knowledgeable waiver. Knowledgeable waiver is defined as consent where the defendant knows that he or she has a right to refuse, being cognizant of his or her rights in the premises.

## 3) Seizure of the Contraband

¶29. The record from the suppression hearing reflects that Officer Bobby Grimes twice stated the search of Graves' room was based solely upon the search warrant possessed by the officers,

> Q: All right. The search of Michael Graves' bedroom, was that pursuant to your warrant?
>
> A: Yes, sir.
>
> Q: Are you--are you trying to justify your search on consent?
>
> A: We had a --no sir. We had a -- we're justifying our search on the search warrant...

¶30. Thus, the case at bar hinges upon whether the search warrant possessed by the officers justified the search of Graves' room. The state argues that under our decision in ***Hamilton v. State,*** 556 So.2d 685 (Miss.1990) the search of Graves' room was proper under the search warrant. The state's reliance is misguided. The case at bar is distinguishable from ***Hamilton***.

¶31. In ***Hamilton***, a warrant was issued to search a two story building on the property of the defendant. The issuing authority intended the warrant to issue for the residence of the defendant. When the officers arrived to execute the warrant upon the two story building, no one answered the door. The officers gave up after a few minutes at this building and walked down to a one story building a few feet away. The defendant answered the door at this building, which turned out to be his actual residence. The officers conducted their search at this residence, and used the search warrant to justify the search. Thus, the issue was whether a warrant is valid to search a person's residence when it confuses one building on a person's residential property as his residence, when in actuality the residence is another building on the same property owned by the same person. We opined that it was,

> uncontradicted that the officers had probable cause to search the residence of appellant and they went to and upon the premises for the purpose of searching appellant's residence. We are of the opinion that the affidavit and search warrant, both of which incorporated by reference and made a part of the instruments the underlying facts and circumstances sheet, sufficiently directed the officers to appellant's premises where they found him in his residence, executed the warrant and discovered marijuana.

556 So.2d at 689.

¶32. The record in the case *sub judice* reflects that within this mobile home there existed two "residences." One was the residence of Scott Malone. It consisted of his room and all the common areas of the mobile home. The other was the residence of Michael Graves. It consisted of his room and all the common areas of the mobile home. The warrant was issued for the express purpose of searching for contraband possessed by Scott Malone in *his* residence. The officers therefore could have legally searched all common areas of the mobile home and Malone's room. The officers overstepped their bounds when they used the same search warrant to justify a search of Graves' room.

¶33. These officers had a number of constitutionally valid alternatives from which they could have chosen to justify the search of Graves' room. The officers could have initially obtained a valid warrant that specially designated Graves' room for search. Or, the officers could have detained Graves on the premises, retrieved a new warrant, and then searched his room. Finally, the officers could have conducted the remainder of the search based upon probable cause gained in the mobile home that Graves possessed LSD in his bedroom, and if Graves knowledgeably consented to the search of his room, the officers could have used such valid consent as an exception to the warrant requirement. Unfortunately, the officers chose none of these options.

¶34. For this reason, we follow *Scott* and *Jones* and remand this case to determine whether Graves knowingly consented to the warrantless search of his bedroom.

## Conclusion

¶35. The final determination of the admissibility of the discovered LSD in this case hinges on whether Graves consented to the warrantless search, whether his consent was impaired, or whether he suffered from some diminished capacity. The trial court never reached the issue of consent in this case. We therefore reverse and remand this case for a new trial.

¶36. REVERSED AND REMANDED.

PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS AND SMITH, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.

McRAE, JUSTICE, DISSENTING:

¶37. Though the majority should be commended for properly reversing this case, remand for a new

trial is totally unnecessary because the officers in this case conceded that they justified their search on a warrant, not on Graves's consent. The majority concedes that even though the officers in this case had several constitutionally valid means to justify their search of Graves's room, they exercised none of those means. As the majority notes, Officer Grimes testified that the search of Graves's room was based on a search warrant:

> Q: All right. The search of Michael Graves' bedroom, was that pursuant to your warrant?
>
> A: Yes, sir.
>
> Q: Are you--are you trying to **justify your search on consent?**
>
> A: We had a--**no sir**. We had a--we're **justifying our search on the search warrant. . .**

The majority is remanding to determine if consent was an issue in this case. However, the State never made consent an issue in this case, as is borne out by the record. The officers entered Graves's bedroom strictly on the strength of the search warrant, and at trial, the search was justified by the search warrant. To send this case back for a new trial not only allows the State a "second bite at the apple," but also it forces the State to address an issue that did not exist in the first trial. The State waived the issue of whether Graves gave consent, and the State should not be given a second chance to raise the issue here. If the majority truly believes that the "officers overstepped their bounds when they used the same search warrant to justify a search of Graves' room," there is no need to remand for a new trial. This Court should end this case here and deem the search illegal. If the reverse had occurred by the defendant, we would have said that the error was waived. We should be even handed.

¶38. I must also disagree with the majority's assertion that the initial burden to prove knowing consent is no longer on the State. Prior to the majority decision, the burden had been upon the State to prove voluntary and knowledgeable consent. To be certain, where the validity of a search rests on consent, under the U.S. Constitution, "the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. 491, 497 (1983).

¶39. In interpreting Section 23 of the Mississippi Constitution, however, this Court broadened protection under consensual search law in *Penick*, by announcing that consent is valid only if there is knowledgeable as well as voluntary waiver of a party's constitutional right not to be searched. *Penick v. State*, 440 So. 2d 547, 551 (Miss. 1983). In the words of this Court, "We, therefore, hold that under Section 23 of the Mississippi Constitution, and the facts of this particular case, the state failed to prove beyond a reasonable doubt or by clear evidence that there was a knowledgeable waiver by Penick of his state constitutional right not to be searched." *Id.*

¶40. As the majority discusses, this Court addressed consensual search law in *Jones v. State ex rel. Mississippi Dept. of Public Safety*, 607 So. 2d 23 (Miss. 1991). Unfortunately, the *Jones* opinion is unclear for several reasons. First, after the majority in *Jones* reasoned that consent must be voluntary and absent diminished capacity to be valid, it turned right back around to declare that the State is not required to demonstrate knowledge. *Id.* at 28. This declaration virtually eviscerated our prior holding in *Penick*. Then the *Jones* majority followed the *Penick* rule of requiring knowledgeable and

voluntary waiver, a unique standard applicable to the Mississippi Constitution, and it subsequently purported to "apply the same test for valid consent as the federal standard," which only required a voluntary waiver. *Id.* Finally, the *Jones* majority said that, to be valid, consent must be voluntary and absent diminished capacity, which is equivalent to saying voluntary and knowledgeable. Then, oddly, it asserted that even though consent has to be voluntary and knowledgeable, the State does not have to prove that it is knowledgeable; rather, the defendant must prove that it was not knowledgeable. These quizzical assertions lead to the majority's inappropriate declarations in the case sub judice.

¶41. As I parted with the majority in *Jones*, I again vigorously dissent to the concept that the State has no burden to demonstrate knowledge. The majority misstates the effect of the *Jones* opinion when it says that *Penick*'s knowledge requirement is still alive. In effect, the majority now says that the State must prove voluntary consent only, and if the defendant does not claim that waiver was not knowledgeable, then the State does not have to go any further. This means that there is no knowledge requirement at all. The problem is that this construction defeats the purpose of *Penick* and the purpose of this Court's expansion of protection regarding consensual search law under the Mississippi Constitution.

¶42. We should stand by our holding in *Penick*, requiring the extended protection under the Mississippi Constitution for consensual search law. The State must prove knowledgeable and voluntary waiver beyond a reasonable doubt. I would also overrule *Jones* to the extent that it initially places upon the defendant the burden of showing impaired consent or diminished capacity. I submit that the more favorable rule is that the *State* always must show that a defendant's waiver of his right not to be searched was knowledgeable and voluntary.

¶43. Because the majority is allowing the State to raise an issue that was not before this Court originally and because the majority erroneously has chosen to shift the burden of proving consent to the defendant, I dissent. The best resolution of this matter would be to reverse and render a decision in favor of Graves, because the State initially failed to prove its case for possession with intent to distribute, or at least to rule that the evidence obtained from the search warrant was illegal.

1. *See e.g., Rankin v. State*, 636 So. 2d 652, 657 (Miss. 1994), wherein this Court stated:

> The strictures of the Fourth Amendment are not violated when one under lawful custodial arrest is subjected to a full search of his person. *U.S. v. Robinson*, 414 U.S. 218, 235 (1973). A search incident to a valid arrest is not limited to a Terry type search. *Id*. at 229. The area within the arrestee's immediate control, from which he might obtain a weapon or where he may conceal evidence, may also be searched, consistent with the Fourth Amendment. *Chimel v. California*, 395 U.S. 752, 763 (1969), *rehearing denied*, 396 U.S. 869 (1969). The personal effects in the arrestee's possession at the place of detention, which were subject to a search at the time and place of arrest, may later be searched and seized without a warrant at the place of detention. *U.S. v. Edwards*, 415 U.S. 800, 805-06 (1974).

*See also Jones v. State*, 481 So. 2d 798 (Miss. 1985).

2. ***Wolf v. State***, 260 So. 2d 425 (Miss. 1972). ***Miller v. State***, 373 So. 2d 1004, 1006 (Miss. 1979) goes further to state "[a]n automobile may be searched, given the proper circumstances, without warrant either as an incident to a valid arrest or because there is probable cause that the vehicle itself may be evidence of crime or contain something that offends against the law." ***Miller***, 373 So. 2d at 1006.

3. ***Carney v. State***, 525 So. 2d 776 (Miss. 1988)("plain view doctrine requires that in order to be proper the seizure must have occurred pursuant to a lawful search and probable cause must have existed to believe that the substance was contraband); ***Hanner v. State***, 465 So. 2d 306 (Miss. 1985). ***Isaacks v. State***, 350 So. 2d 1340, 1345 (Miss. 1977) (explaining that plain view doctrine does not eliminate requirement that, absent exigent circumstances, seizures must be based on valid warrant). ***See also Miller v. State***, 373 So. 2d 1006 (Miss. 1979)(including "plain smell"). ***But see Strange v. State***, 530 So. 2d 1336, 1340 (Miss. 1988)(refusing to allow "plain smell" as exigent circumstance).

4. ***Ellis v. State***, 573 So. 2d 724, (Miss. 1990). "The rationale underlying the ***Terry*** stop is the protection of the officer." ***Ellis***, 573 So. 2d at 725. The search 'must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer.' ***Id.*** (quoting ***Terry v. Ohio***, 392 U.S. 1, 29 (1968)).

While probable cause is required before a lawful arrest may be effectuated, a reasonable suspicion is all that is required to effectuate a "stop and frisk." ***Adams v. Williams***, 407 U.S. 143 (1972); ***Terry v. Ohio***, 392 U.S. 1 (1968); ***Floyd v. State***, 500 So. 2d 989 (Miss. 1986); ***McCray v. State***, 486 So. 2d 1247 (Miss. 1986); ***Henry v. State***, 486 So. 2d 1209 (Miss. 1986); ***Hester v. State***, 463 So. 2d 1087 (Miss. 1985); ***Smith v. State***, 386 So. 2d 1117 (Miss. 1980).

Investigative, or Terry stops, are recognized in this state. ***Floyd v. State***, 500 So. 2d 989 (Miss. 1986); ***McCray v. State***, 486 So. 2d 1247 (Miss. 1986); ***Caldwell v. State***, 381 So. 2d 591 (Miss. 1980); ***Warren v. State***, 369 So. 2d 483 (Miss. 1979); ***Green v. State***, 348 So. 2d 428 (Miss. 1977); ***Singletary v. State***, 318 So. 2d 873, 876 (Miss. 1975). When a "reasonable investigatory stop" is conducted, an officer is authorized to "conduct a weapons search limited in scope" to the discovery of concealed weapons. ***Singletary***, 318 So. 2d at 877.

5. ***Smith v. State***, 419 So. 2d 563 (Miss. 1982).

> The basic elements of the exception may be summarized in the following manner: (1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. (2) The search must not be primarily motivated by intent to arrest and seize the evidence. (3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched.

***Smith***, 419 So. 2d at 570. ***See also Ferguson v. State***, 323 So. 2d 745 (Miss. 1975).

6. ***Cole v. State***, 493 So. 2d 1333, 1336 (Miss. 1986)("where the state's interest in performing them (warrantless searches) is great; the danger and degree of intrusion to the one arrested or searched must be small"); ***Drane v. State***, 493 So. 2d 294 (Miss. 1986)(allowing spot checks in game areas).