708 So.2d 1385 (1998)
Timothy Allen GAZAWAY, Appellant,
v.
STATE of Mississippi, Appellee.
No. 96-KA-00657 COA.
Court of Appeals of Mississippi.
March 10, 1998.
*1386 William Charles Bell, Ridgeland, for Appellant.
Michael C. Moore, Attorney General, W. Glenn Watts, Sp. Asst. Attorney General, Jackson, for Appellee.
Before THOMAS, P.J., and KING and PAYNE, JJ.
THOMAS, Presiding Judge, for the Court:
¶ 1. Timothy Allen Gazaway appeals his conviction for possession of methamphetamine and marijuana raising the following issues as error:
I. THE TRIAL COURT ABRIDGED GAZAWAY'S FUNDAMENTAL RIGHT TO A FAIR AND IMPARTIAL JURY WHEN THE COURT DENIED GAZAWAY'S MOTION FOR A MISTRIAL ON THE GROUND THAT THE COURT APPOINTED THE FOREMEN OF THE JURY.
II. THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING GAZAWAY'S MOTION TO SUPPRESS ADMISSION OF THE MARIJUANA AND CRYSTAL METHAMPHETAMINE THAT WAS SEIZED PURSUANT TO AN ILLEGAL SEARCH AND SEIZURE.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. On December 6, 1995, the Mississippi Bureau of Narcotics, along with the Mississippi Department Of Transportation, were conducting a drug interdiction detail along Interstate 20 in Scott County. They were also checking commercial vehicles for Department of Transportation violations. A semi-truck was observed which had improper blue lights on the rear of the truck. The truck was pulled over and eventually searched.
¶ 4. The driver of the truck was Marie Gazaway. Her husband, Timothy Gazaway, was in the sleeper compartment of the truck when it was pulled over. Luis Hawkins, an officer of the Mississippi Bureau of Narcotics, approached Mrs. Gazaway and asked if she would consent to have her truck searched and she agreed. After having asked Mr. Gazaway to step down, Officer Hawkins then preceded to search the truck. Officer Hawkins found a container in the sleeper compartment of the truck which contained marijuana.
*1387 ¶ 5. James Richardson, an officer with the Mississippi Department of Transportation, dealt with Mr. Gazaway while Officer Hawkins conducted his search. He asked Mr. Gazaway to both take his hands out of his pockets and to empty his pockets. Mr. Gazaway was observed throwing a small package from his pocket into the truck. The package was recovered and discovered to contain crystal methamphetamine.
¶ 6. Mr. Gazaway was placed under arrest, searched, and read his Miranda rights. The search incident to arrest resulted in the discovery of more marijuana. He then told the officers that all of the drugs found belonged to him. Mrs. Gazaway was neither arrested nor indicted. Officers then asked Mrs. Gazaway to write out her consent, which she did. This written consent was drafted after the search of the truck and was witnessed by Officer Palmer, another member of the Mississippi Department of Transportation present at the scene. Mr. Gazaway was indicted for possession of controlled substances. Following deliberations, the jury returned a verdict of guilty.

ANALYSIS

I.

THE TRIAL COURT ABRIDGED TIMOTHY GAZAWAY'S FUNDAMENTAL RIGHT TO A FAIR AND IMPARTIAL JURY WHEN THE COURT DENIED TIMOTHY GAZAWAY'S MOTION FOR A MISTRIAL ON THE GROUND THAT THE COURT APPOINTED THE FOREMAN OF THE JURY.
¶ 7. The Mississippi Supreme Court has mandated that trial judges should not appoint jury foremen, for that is a decision which should be made by fellow jurors. Ballenger v. State, 667 So.2d 1242, 1259 (Miss. 1995). The trial judge in this case did in fact appoint the jury foreman. However, in this instance, Gazaway failed to make a contemporaneous objection when the trial judge appointed the jury foreman. After the foreman was appointed, the jury was allowed to retire and deliberate for forty-five minutes. Upon return of the guilty verdict the jury was dismissed and proceedings concluded for the day. Sentencing of the defendant was then scheduled for the following day. Not until the next morning did Gazaway bring this issue to the trial court's attention. This issue was first raised with a motion for mistrial right before sentencing. The failure to make a contemporaneous objection waives the right to raise this issue on appeal. Id. (citing Chase v. State, 645 So.2d 829, 835 (Miss. 1994); Cole v. State, 525 So.2d 365, 369 (Miss. 1987); Irving v. State, 498 So.2d 305 (Miss. 1986); Cannaday v. State, 455 So.2d 713, 718-19 (Miss. 1984)). Furthermore, Gazaway could not advance at trial or on appeal any meaningful argument as to prejudice, except to assume or infer some taint on the jury's deliberations. We will not address issues not properly preserved for review. This issue is procedural barred.

II.

THE TRIAL COURT ERRED AS A MATTER OF LAW BY DENYING TIMOTHY GAZAWAY'S MOTION TO SUPPRESS ADMISSION OF THE MARIJUANA AND CRYSTAL METHAMPHETAMINE THAT WAS SEIZED PURSUANT TO AN ILLEGAL SEARCH AND SEIZURE.
¶ 8. Gazaway argues that the marijuana and crystal methamphetamine introduced as evidence against him at trial was seized pursuant to an illegal search and seizure and therefore, should be excluded. The right to be free from unreasonable searches and seizures is guaranteed by the Fourth Amendment of the United States Constitution as well as Art. 3, § 23 of the Mississippi Constitution. This right is protected by the warrant clauses of both provisions, which require the government to obtain a warrant based on probable cause before a search is conducted. However, the constitutional preference for searches pursuant to a warrant is tempered by the fact that both the United States Supreme *1388 Court and the Mississippi Supreme Court have recognized certain well-delineated exceptions to the requirement of obtaining a valid warrant. Graves v. State, 708 So.2d 858, 861 (Miss. 1997). These exceptions include search incident to arrest, search of a vehicle (where probable cause exists that the car is evidence of a crime or may contain evidence of a crime), plain view, stop and frisk, hot pursuit and emergency search, administrative search, and consent to a search. Id.
¶ 9. Chief among these exceptions is the one allowing for consent to a search. Id. The United States Supreme Court has long recognized that a voluntary consent to a search eliminates an officer's need to obtain a search warrant. Davis v. United States, 328 U.S. 582, 593, 66 S.Ct. 1256, 1261, 90 L.Ed. 1453 (1946); Zap v. United States, 328 U.S. 624, 628, 66 S.Ct. 1277, 1279, 90 L.Ed. 1477 (1946). The Mississippi Supreme Court has also recognized that a defendant can waive his rights under the warrant requirement by consenting to a search. Smith v. State, 133 Miss. 730, 731, 98 So. 344, 345 (Miss. 1923); Quan v. State, 185 Miss. 513, 514, 188 So. 568, 569 (Miss. 1939); Penick v. State, 440 So.2d 547, 549 (Miss. 1983); Jones v. Mississippi Dept. of Public Safety, 607 So.2d 23, 26 (Miss. 1991). Where the United States Supreme Court and the Mississippi Supreme Court differ is upon what constitutes a valid consent.
¶ 10. The United States Supreme Court addressed the issue of consent in the landmark case of Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). There the Schneckloth court held that the pivotal determination of whether or not there was a valid consent rests on whether or not the consent was voluntary and not whether the party knew or was informed of a constitutional right which he then intentionally relinquished or abandoned. Id. at 223-28, 93 S.Ct. at 2045-48. The United States Supreme Court stated that "the question whether a consent to a search was in fact `voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances." Id. at 227, 93 S.Ct. at 2048. The Supreme Court went on to state, ["v]oluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Id. at 248-49, 93 S.Ct. at 2059.
¶ 11. This view of the United States Supreme Court of what constitutes a valid consent is in sharp contrast to that imposed by the Mississippi Supreme Court. In Penick v. State, 440 So.2d 547, 550 (Miss. 1983), the Mississippi Supreme Court held that the Mississippi Constitution required that for there to be a valid waiver of the Constitutional right against an illegal search, it is necessary that the person searched be aware of his right to refuse. The Mississippi Supreme Court went on to state that this knowledgeable waiver must be proved by the State beyond a reasonable doubt or by clear evidence. Id. at 551. This opinion, however, has been limited by the recent decisions of Jones v. Mississippi Dept. of Public Safety, 607 So.2d 23 (Miss. 1991) and Graves v. State, No. 708 So.2d 858 (Miss. 1997).
¶ 12. The Mississippi Supreme Court in Jones held that ["t]he State is not required to demonstrate knowledge" but rather the "burden is on the defendant to show impaired consent or some diminished capacity." Jones, 607 So.2d at 28. The more recent Supreme Court decision of Graves, which interprets Jones, held:
Jones limits Penick's knowledgeable waiver requirement to only those cases where the defendant specifically claims that his or her consent was not knowledgeable. Jones holds that the State has no initial burden to demonstrate knowledgeable waiver. If the defendant claims that his waiver was not knowledgeable, the burden is on him to raise the issue of lack of knowledgeable waiver. Knowledgeable *1389 waiver is defined as consent where the defendant knows that he or she has a right to refuse, being cognizant of his or her rights in the premises.
Graves, 708 So.2d at 863 - 864.
¶ 13. The Mississippi Supreme Court has also addressed the issue of whether a third party can properly consent to a search:
Consent to search voluntarily given without coercion may be given by a third party who possessed common authority, mutual use and joint control over property not in the exclusive control or possession of the defendant and where the defendant had no reasonable expectation of privacy.
Mettetal v. State, 615 So.2d 600, 603 (Miss. 1993)(quoting Brown v. State, 358 So.2d 1004, 1005 (Miss. 1978)).
¶ 14. Keeping these standards in mind, we will now look at the searches and seizures in this case to determine if they were reasonable. There are in fact three searches and three seizures in this case. The first search occurred when Officer Hawkins searched the truck. It was there he found and seized a container which held marijuana. The second search occurred when Mr. Gazaway was asked to step down from the truck. At the time, Mr. Gazaway had his hands in his pockets. Officer Richard, who was dealing with Mr. Gazaway, asked him not only to remove his hands from his pockets but to also empty his pockets. Officer Richardson testified he asked Mr. Gazaway to do this for Mr. Gazaway's safety as well as the safety of the officers present. When Mr. Gazaway was emptying his pockets, he attempted to throw a small plastic bag into the truck. This was seized and later determined to contain crystal methamphetamine. Mr. Gazaway was then placed under arrest. The third search and seizure occurred after Mr. Gazaway was placed under arrest. He was read his Miranda rights and a search of his person was conducted. Officer Richardson found more marijuana in one of Mr. Gazaway's outer pockets. Mr. Gazaway then confessed to owning all of the controlled substances found and was taken to Scott County Jail.
¶ 15. The first search of the truck is the determinative factor in this case. It follows that if this was a proper and reasonable search the following two searches of Mr. Gazaway himself should not have to be addressed. This is based on the fact that since marijuana was found in the truck, Mr. Gazaway would have eventually been arrested, resulting in a search incident to arrest and the seizure of the crystal methamphetamine and other marijuana allegedly found only because of an illegal search. Once the marijuana was found, only one of two things would have happened, both with the same results. If no one claimed the marijuana, both Mr. and Mrs. Gazaway would have been arrested and searched. If Mr. Gazaway claimed the marijuana, which he actually did in this case, he would have been arrested and searched. Since both scenarios result in Mr. Gazaway being searched, whether or not the two searches following the search of the truck were proper are moot issues since he would have been searched anyway if the first search was proper.
¶ 16. Mr. Gazaway argues that the consent obtained from his wife was not valid based on various reasons. He argues the State never demonstrated that Mrs. Gazaway actually knew of her right to refuse the search. Mr. Gazaway points to the inconsistencies in the testimony of Officer Hawkins, who obtained the consent, in the preliminary hearing and suppression hearing. He also points to the fact that Officer Hawkins testified at the preliminary hearing that no oral consent was given. We are satisfied, however, that the consent was valid.
¶ 17. First, Mr. Gazaway has failed to meet his burden to show that his wife did not know of her right to refuse. The only persons who testified on this matter at the preliminary hearing, the suppression hearing, and trial are the officers involved. Although there are inconsistencies between the preliminary hearing and suppression hearing of when, how, and in what form the consent was obtained, there are no inconsistencies when it comes to whether any coercion or intimidation *1390 was used to obtain the consent. All officers testified no threats or coercion were used to obtain the consent. Graves, 708 So.2d at 863 - 864, holds the State no longer has the burden to show knowledgeable waiver. Since Mrs. Gazaway did not testify, we have nothing to counter the officers' testimony.
¶ 18. Second, the written consent of Mrs. Gazaway evidences the fact that her consent was voluntary. She specifically says so in her statement. She signed the statement and there is nothing suggesting that this document was forged or obtained through duress. Furthermore, Officer Palmer signed the same document stating Mrs. Gazaway had written it of her own free will.
¶ 19. Finally, although Officer Hawkins when specifically asked at the preliminary hearing if Mrs. Gazaway had given an oral consent said she had not, he had early in the same testimony, at that same hearing, said that in fact she had. Officer Hawkins's testimony at the preliminary hearing, suppression hearing, and trial is consistent that an oral consent was given first before the search of the truck. His inconsistencies arise about when the written consent was given and whether or not it was on a pre-printed form. We are satisfied that a valid oral consent was given before the search of the truck and that a valid written consent was given after the search of the truck.
¶ 20. We also find that this was a proper consent given by a third party who possessed common authority, mutual use, and joint control over the truck. Mr. and Mrs. Gazaway are married, Mrs. Gazaway was driving the truck at the time of this incident, and she also referred to the truck as "my truck" in her written consent statement. This assignment of error is without merit.
¶ 21. THE JUDGMENT OF THE SCOTT COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I POSSESSION OF METHAMPHETAMINE AND SENTENCE OF THREE YEARS AND FINE OF $5,000 AND UPON SERVING TWO YEARS AND PAYING FINE, ONE YEAR IS SUSPENDED, AND PLACED ON PROBATION FOR FIVE YEARS; COUNT II POSSESSION OF MARIJUANA AND SENTENCE TO PAY $250 FINE WITH CONDITION OF PROBATION IN COUNT I THAT FINE IN COUNT II IS PAID, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO APPELLANT.
BRIDGES, C.J., and DIAZ, HERRING, HINKEBEIN, KING and PAYNE, JJ., concur.
McMILLIN, P.J., concurs with separate written opinion joined by BRIDGES, C.J., and COLEMAN and SOUTHWICK, JJ.
McMILLIN, Presiding Judge, concurring:
¶ 22. I concur in the majority's decision to affirm both counts of Gazaway's conviction. As to the marijuana discovered in the truck, Gazaway's wife certainly had authority to give her consent to a search of the truck occupied by her and her husband. That search led to the discovery of the marijuana and Gazaway's subsequent confession was more than enough to sustain his conviction. None of this evidence was unlawfully obtained.
¶ 23. However, I respectfully disagree with the majority's analysis regarding the admissibility of the methamphetamine, though I agree that it should have been admitted. The majority finds the evidence admissible under an inevitable discovery analysis that I find both flawed and unnecessary. The majority suggests that, once the marijuana in the truck was discovered, it was inevitable that Gazaway would have been arrested and searched based on a theoretical analysis of the field of possibilities. The majority concludes that there were only two ways that the drama could have played out at that point: (a) neither Gazaway nor his wife could have claimed the marijuana and both would have been arrested and searched, or (b) Gazaway could have confessed to ownership of *1391 the marijuana (as, in fact, happened) and would have been arrested and searched incident to his arrest. The flaw in this analysis is that, without explanation, the majority excludes a third equally plausible possibility  that Mrs. Gazaway could have convincingly claimed the marijuana as her own, thereby precluding an arrest and search of her husband. This is an entirely plausible hypothetical end to the events since we know, in fact, that Mrs. Gazaway avoided arrest and search based upon her husband's willingness to claim the marijuana.
¶ 24. Nevertheless, I find it unnecessary for the Court to involve itself in this type speculation without first asking the fundamental question of whether the defendant's Fourth Amendment rights were even implicated in the discovery of the amphetamines. This question is not discussed in the majority's opinion. Had it been properly considered, I am satisfied that it would be clear that use of the inevitable discovery doctrine is unnecessary.
¶ 25. At the suppression hearing, Officer Richardson, who was with Gazaway when the methamphetamine was recovered, testified as follows:
Q. Let me stop you and ask you if you asked him to remove his hands from his pockets?
A. Yes, I did.
......
Q. And, did you make any further request of him?
A. Yes, sir.
Q. What was that?
A. I asked him if he would empty his pockets.
......
Q. Now, what, if anything, happened as you asked him that question?
A. I asked him to take his hands out of his pockets and to empty them, and as he did, I proceeded to get into the trailer, and another officer was present kind of watching him. When the officer turned his back, and I was getting up on the trailer, he threw an object inside of the trailer.
......
Q. Were there any threats or violence or force used against him?
A. No.
¶ 26. At this point, the "object" was recovered, which proved to be the methamphetamine drugs. This gave the officers probable cause to arrest Gazaway. The record is clear that Gazaway's response to the request to empty his pockets was consensual. In the course of voluntarily complying with the officer's request, Gazaway attempted to secrete the contraband drugs. This attempt was observed and resulted in the drugs being recovered at a time when they were not in his possession. Since Gazaway's actions all occurred in the course of a consensual transaction, he was not being subjected to a search for purposes of the Fourth Amendment at the time he attempted to discard or hide the drugs. Neither did the retrieval of the drugs from the location where Gazaway tossed them constitute a search under the Fourth Amendment.
¶ 27. Because there was no search or seizure involved in the recovery of the methamphetamine drugs, Gazaway's Fourth Amendment rights were never implicated and an inevitable discovery analysis is unnecessary in order to affirm the conviction on the charge.
BRIDGES, C.J., and COLEMAN and SOUTHWICK, JJ., concur with this separate written opinion.